**STATE of Iowa, Appellee,**

v.

**Juanita Kay PARRISH, Appellant.**

No. 92–630.

Supreme Court of Iowa.

June 16, 1993.

John P. Messina, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and Kimberly Griffith, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant Juanita Kay Parrish appeals her convictions of possession with intent to deliver fifty or more grams of cocaine base in violation of Iowa Code section 204.-401(1)(a)(3) and failure to affix drug-tax stamps in violation of Iowa Code section 421A.12 (1991). She contends the district court erred in denying her motion for judgment of acquittal because the State failed to establish that the quantity of cocaine was in her possession rather than exclusively in the possession of her supplier.

We affirm.

I. *Background facts and proceedings.* Juanita Kay Parrish bought, cut, packaged and sold crack cocaine from her house in Waterloo. In fact, she permitted her residence to become a "crack house."

There were five people involved in living in and selling cocaine out of this crack house: Parrish, who owned the house and sold cocaine; Donovan Shields, the cocaine wholesaler or supplier; Delvonte Williams, who kept the main stash of cocaine and sold cocaine; Juanita "Mom" Collett, Parrish's daughter who both sold drugs and used them herself; and Murray Montgomery, a "flunky" who ran errands for the group.

Apparently, Williams owned a Cadillac car which remained permanently parked on Parrish's property surrounding her house. No one ever drove the Cadillac; indeed, it was not even licensed. Instead, the main stash of cocaine which supplied the house was kept in the Cadillac's locked trunk. Whenever the cocaine supply in the house ran out, someone would retrieve some from the Cadillac's trunk. The record shows that Parrish did not personally have keys to the Cadillac or the trunk.

The police raided the premises on September 16, 1991, to execute a search warrant. They recovered only a small amount of crack cocaine and drug paraphernalia inside Parrish's house. However, the police recovered out of the Cadillac's trunk over fifty grams of cocaine base and approximately $10,000 in small bills currency and food stamps.

During the raid and after requesting to go to the bathroom, Parrish was caught trying to flush six individually wrapped rocks of crack cocaine down the toilet. No other money or drugs were found on Parrish's person.

By trial information, the State charged Parrish with possession of fifty or more grams of cocaine base with intent to deliver in violation of Iowa Code section 204.-401(1)(a)(3) and failure to affix drug-tax stamps in violation of Iowa Code section 421A.12. The trial information jointly charged Parrish, Williams, and Collett. Collett was tried separately, but Parrish and Williams were tried jointly.

At trial after the close of the State's case, Parrish unsuccessfully moved for a judgment of acquittal. The jury returned guilty verdicts on both charges against both Parrish and Williams. By interrogatory, the jury found the amount of cocaine base possessed by Parrish and Williams exceeded fifty grams.

Parrish timely filed a motion for new trial, asserting that the verdict was contrary to the law and the evidence. She also

filed a motion in arrest of judgment, asserting the evidence was insufficient to sustain her convictions. The district court overruled both motions and sentenced Parrish on both convictions.

Defendant Parrish appealed. The tax-stamp conviction is also keyed to the cocaine in Williams' vehicle and will be considered with the possession with intent to deliver conviction.[1]

■ In determining whether there is sufficient evidence to support a jury verdict, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record. *State v. Garr*, 461 N.W.2d 171, 173 (Iowa 1990). A jury verdict supported by substantial evidence is binding on us. *Id.* Substantial evidence is "evidence that could convince a rational factfinder that a defendant is guilty beyond a reasonable doubt." *Id.* Furthermore, direct and circumstantial evidence are equally probative. *Id.*

II. *Sufficiency of the evidence.* On appeal, Parrish contends there was insufficient evidence that she possessed more than fifty grams of cocaine base. The State asserts the jury properly found Parrish possessed the cocaine on theories of conspiracy and common scheme by her with the other occupants of her premises, including Shields and Williams. We agree with the State.

Iowa Code section 204.401(1) states:

Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance, or *to act with, enter into a common scheme or design with, or conspire with one or more other persons to* manufacture, deliver, or *possess with the intent to* manufacture or *deliver* a controlled substance,

a counterfeit substance, or a simulated controlled substance.

(Emphasis added.)

■ Section 204.401(1) outlines a single offense which may be committed by alternative means. *State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981). The State presented evidence that Parrish possessed the cocaine base by conspiracy and by common scheme or design with the other persons.

■ The three elements of possession are: 1) dominion and control over the substance, 2) knowledge of its presence, and 3) knowledge of its nature. *State v. Rudd*, 454 N.W.2d 570, 571 (Iowa 1990); *State v. Reeves*, 209 N.W.2d 18, 21 (Iowa 1973). The knowledge required for the second and third elements can be inferred. *Rudd*, 454 N.W.2d at 571; *Reeves*, 209 N.W.2d at 22.

■ Possession is actual when "the substances are found on the person of the accused." *Rudd*, 454 N.W.2d at 571. Possession is constructive when the defendant maintains "dominion and control of the place where the substances are found." *Id.* This dominion and control can be either direct or *indirect.* *Id.* It is direct when the defendant is in such close proximity to the substance as to be able to claim immediate dominion over it. It is indirect when the defendant maintains or "closely shares exclusive dominion over the premises" where the substance is found. *Id.*

We have previously held that one can conspire to possess controlled substances with the intent to deliver them. *See, e.g., State v. Draper*, 457 N.W.2d 606 (Iowa 1990) (husband convicted under conspiracy theory of same possession with intent to deliver drug offenses as wife, whom jury found to be the principal). The federal courts have held similarly. *See United States v. Goines*, 988 F.2d 750 (7th Cir. 1993); *United States v. Copeland*, 902 F.2d 1046 (2d Cir.1990); *United States v. Williams*, 897 F.2d 1034 (10th Cir.1990);

---

**1.** Iowa Code section 421A.12 only requires ten or more dosages of crack cocaine to trigger the drug tax-stamp provision.

*United States v. Holland,* 884 F.2d 354 (8th Cir.1989).

 Here, the district court refused to include the standard conspiracy instructions to the jury because no separate conspiracy offense had been charged. Instead, the State had presented theories and evidence that Parrish conspired with the other defendants or entered into a common scheme to undertake the business venture of selling crack cocaine as provided by section 204.401(1). This business venture necessarily included possession of a source or stash of cocaine to sell on her premises. As a result, the court did include instructions on these common scheme and conspiracy theories.

Although Parrish allegedly did not have her own keys to Williams' Cadillac, the record shows that whenever the defendants inside the house ran out of cocaine to sell, "someone" would go out to the Cadillac and retrieve more cocaine. The record does not show that access to the Cadillac was limited to only one or two persons.

The record also shows that the Cadillac was *permanently* parked on Parrish's property, next to her house. No one ever drove the car. In fact, the car was not even licensed. Parrish knew the cocaine stash was kept in the Cadillac's trunk.

Under this record, it appears the car and its trunk were merely an extension of the operations inside the house and served as a storage locker for the cocaine. In the context of the overall crack house operation, the cocaine could have just as easily been in a back room of the house. However, the record shows that many drug dealers find it wise to keep their money and selling point located separately from their main drug stash for safety purposes.

One of the functions of the jury is to decide what reasonable inferences may be drawn from the evidence. *Reeves,* 209 N.W.2d at 23. The jury here could have reasonably inferred from all the evidence that Parrish and the other defendants conspired to jointly possess the cocaine stash on defendant Parrish's premises to facilitate and perpetuate operation of the crack house.

III. *Disposition.* We conclude there was sufficient evidence for the jury to find defendant Parrish conspired with the other defendants to possess the more than fifty grams of cocaine base found in the trunk of Williams' Cadillac car permanently parked on Parrish's property. We therefore affirm Parrish's convictions.

**AFFIRMED.**