STATE of Iowa, Appellee,

v.

**David Lee SIMPSON, Appellant.**

No. 93–996.

Supreme Court of Iowa.

March 29, 1995.

Rehearing Denied April 26, 1995.

628

ANDREASEN, Justice.

This case involves convictions for drug related offenses stemming from the discovery of marijuana on the premises of a house that the defendant had occupied with his brother. The defendant's appeal was transferred to the court of appeals which affirmed the convictions. We granted the defendant's application for further review. Having reviewed the record, we affirm the court of appeals' decision and the district court's judgments.

### I. *Background.*

The defendant, David Lee Simpson and his brother, Roger Lee Simpson, were both incarcerated in June 1992. Prior to their incarceration they lived together in a house which had belonged to their parents. Their father died in January 1992; and their mother died in July 1992. The record is unclear whether their mother also lived in the house during 1992 before her death. David was released from jail on August 20 so that he could put his personal affairs in order. He returned three days later, August 23, and has been incarcerated since that date.

David requested utility service at the house be put in his name in February 1992. He made a cash deposit with the utilities at that time. The deposit was later applied on the account and a partial refund made to him on August 21, 1992. A utilities' employee then shut off the water for the house at the curb. In late September, David wrote to the utilities and requested it make sure the water to the house was turned off so that the pipes would not freeze because the house would be unoccupied during the winter. On October 1 a utilities' employee went to the house to check that the water was turned off and to remove the water meter from the basement. Both doors to the house were locked and he was unable to remove the water meter. The utilities notified David that the water was disconnected and that he would need to have someone go inside and drain all pipes and remove the water meter.

While at the house the utilities' employee observed several plants which he suspected were marijuana growing along the foundation in the back of the house. He alerted the

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., and Michael W. Mahaffey, County Atty., for appellee.

police. Montezuma police officers Christopher Wray and Tom Sheets went to the house and looked at the plants. Because they also believed the plants were marijuana, they contacted multi-county drug task force officer Fred Oster and reported their observations. Officer Oster spoke with a neighbor and observed the plants through a window in the neighbor's house. He also saw the plants from a nearby alley. Officer Oster identified the plants as marijuana. The largest of the plants were approximately five feet tall. He concluded the marijuana plants had been growing for more than three months.

Officer Oster applied for a search warrant to search the house. The warrant affidavit included a statement that officers Sheets and Wray had advised Oster that "they had received information in the past about both Simpson brothers using/dealing marijuana/and that they possibly started the seedlings of the plants in the basement." The warrant was granted and executed on October 5.

Upon search of the house, officers found and seized a total of sixteen plastic bags containing "manicured" marijuana. Marijuana that has been processed by removing most of the seed and stems leaving just the bud or leaf is manicured marijuana ready to be used. No drug tax stamps were affixed to any of the marijuana.

Of the sixteen bags of marijuana seized by the officers, thirteen were found concealed in a cardboard box in the east bedroom. The marijuana was covered with several books with David's name on them and the box was covered by a large pile of clothing. The thirteen bags weighed a total of 741.2 grams, the equivalent to over one and one-half pounds. Another bag containing marijuana was found in the same bedroom. Other items found in the east bedroom included two pill bottles containing marijuana cigarette butts and a bank money bag with several marijuana pipes in it.

A marijuana pipe and two bags of marijuana were also found in the living room and were seized, as were the marijuana plants

that had been growing along the foundation of the house. The marijuana baggies found in the living room were in a box that was covered with magazines, books, a letter addressed to David, and other papers with his name on them.

On March 17, 1993 David was charged by trial information with drug related offenses on the basis of the marijuana seized at the house. David moved to suppress the evidence obtained through the execution of the search warrant, claiming the search violated his Fourth Amendment rights. The district court denied his motion.

At trial David moved for a judgment of acquittal after the State rested. The court denied the motion and David rested without presenting any evidence. The jury returned guilty verdicts upon all charges and David was convicted of possession of marijuana with intent to manufacture, possession of marijuana with intent to deliver, and failure to affix a drug tax stamp, in violation of Iowa Code sections 204.401(1)(d)[1] and 421A.12[2] (1991). On appeal David challenges the court's instructions to the jury on constructive possession, the sufficiency of the evidence to convict him, and the court's denial of his motion to suppress.

## II. *Standard of Review.*

Our standard of review on the jury instructions and sufficiency of evidence issues is for correction of errors at law. Iowa R.App.P. 4. Because a constitutional issue is raised, we review the denial of the motion to suppress de novo. *State v. Niehaus,* 452 N.W.2d 184, 187 (Iowa 1990).

## III. *Jury Instructions.*

David challenges the district court's instructions on constructive possession and the court's refusal to give an instruction proposed by him. The instructions given to the jury included the marshaling instruction as to each of the charges. In the marshaling instruction the court required the State to prove (1) the defendant "knowingly possessed" marijuana; and (2) that the defen-

---

1. Section 204.401(1)(d) is now codified at section 124.401(1)(d) (1995).

2. Section 421A.12 is now codified at section 453B.12 (1995).

dant knew the substance he possessed was marijuana. The jury was instructed that "[f]or the defendant to know something means he had a conscious awareness that the substance in his possession was marijuana." *See* 1 Iowa Criminal Jury Instructions 200.3 (1988).

The court gave two instructions on possession. First, instruction No. 19 provided:

The word "possession" includes actual as well as constructive possession, and also sole as well as joint possession.

A person who has direct physical control of something on or about his person is in actual possession of it.

A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

*See* 1 Iowa Criminal Jury Instructions 200.47 (1989). The second instruction on possession, No. 20, provided:

Actual possession occurs when the substance is found on the person of the defendant, or in a place over which he has the exclusive use and control.

Constructive possession occurs when the defendant maintains control or has a right to control the place where the controlled substance was found. Constructive possession may be inferred when the substance is found in a place which is accessible to the defendant and is subject to his dominion and control, or the joint dominion and control of the defendant and another.

David objected to both instruction 19 and 20 because they failed to tell the jury that constructive possession is not established from a mere showing that substances were found on the premises over which the accused shared dominion and control. To satisfy the deficiency in the instruction David requested an instruction that provided:

The State's burden of proof regarding constructive possession is to show the de-

fendant knew of the presence of marijuana and had the ability to maintain control over it.

Where the defendant has not been in exclusive possession of the premises, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the defendant will not be inferred but must be established by proof.

On appeal David argues the instructions given on constructive possession were incorrect because they permitted the jury to infer authority or ability to control the marijuana upon proof of joint dominion and control of the place in which the marijuana was found. He urges "constructive possession may be inferred only where the *premises* is in exclusive possession of the defendant or where the defendant has exclusive or joint control of the *area* in which they are found."

■ We find instruction No. 19 to be a correct statement of Iowa law. The definition of possession includes both actual and constructive possession; sole or joint possession. Although David argues the State was not required to establish he had the ability to control the marijuana under the instruction given, we find instruction No. 19 clearly requires both knowledge of the presence of the marijuana and the authority or right to control it. The authority or right to control may be shared. Nor do we find instruction 20 to be an incorrect statement of the law. We previously found no error in the submission of this prior uniform instruction. *State v. Rudd,* 454 N.W.2d 570, 572 (Iowa 1990).

■ It appears the primary challenge to the court's instruction on constructive possession is directed at the instruction upon an inference. An inference is a reasonable deduction from proven facts; a *"permissible* finding based on the existence of other facts." *State v. Hansen,* 203 N.W.2d 216, 219 (Iowa 1972). An inference "leaves the trier of fact free to infer the elemental fact from the basic fact." *State v. Schomaker,* 338 N.W.2d 874, 879 (Iowa 1983). Due process standards are met if there "is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact pre-

sumed, and the latter is 'more likely than not to flow from' the former." *State v. Post*, 286 N.W.2d 195, 203 (Iowa 1979) (citation omitted).

■ "Inferences and presumptions are a staple of our adversary system of factfinding." *Ulster County Court v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979). The trial court generally, as was done here, instructs the jury that in considering the evidence they may make deductions and reach conclusions which reason and common sense lead them to make. Iowa Criminal Jury Instruction 100.6 (1988). Obviously, it is not necessary that the court instruct the jury upon all inferences arising from the evidence. Specific instructions on particular inferences are not necessary in order for counsel to be able to argue the inference and the jury to consider it. We have expressed concern that instructions on certain inferences may involve selective comments on the evidence by the trial court. *State v. Mayberry*, 411 N.W.2d 677, 684 (Iowa 1987). "This is a practice which is not favored in instructing juries and is fraught with potential for abuse." *Id.*

David's objection to the instruction did not challenge the court's submission of an inference instruction but was directed towards his request that the instruction be limited. He urges his requested theory of defense instruction was necessary to make clear to the jury that his joint possession of the house was not alone sufficient justification to infer possession. The proposed instruction used our language in *State v. Reeves*, 209 N.W.2d 18, 23 (Iowa 1973), where we said:

> [W]here the accused has not been in exclusive possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused will not be inferred but must be established by proof. Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury might lawfully infer knowledge by the accused of the presence of the substances on the premises.

■ In *Rudd*, 454 N.W.2d at 572, we approved an instruction that permitted the jury to infer constructive possession when the controlled substance "is found in a place which is . . . subjected to her dominion and control, or to the joint dominion and control of the defendant and other persons." In *Rudd* the defendant argued the inference arising from finding the substance in a place accessible to the defendant and subject to her dominion and control "applies only to situations where the accused has been in exclusive possession of the premises." *Id.* at 573. We rejected this argument. *Id.* We continue to allow an inference of constructive possession when the substance is found in a place where the defendant is not in sole dominion or control. *See State v. Parrish*, 502 N.W.2d 1, 3 (Iowa 1993) (constructive possession established where defendant closely shares exclusive dominion over the premises).

■ We read all of the instructions together, not piecemeal or in artificial isolation. *Sanders v. Ghrist*, 421 N.W.2d 520, 522 (Iowa 1988). When read as a whole, the jury instructions sufficiently set forth the essential elements of the offenses and sufficiently informed the jury what was required to prove possession. We hold it was not error to refuse to give the requested instruction.

## IV. *Sufficiency of Evidence.*

David argues there is insufficient evidence of the requisite elements of possession or intent to support his convictions. We disagree.

■ When reviewing a conviction for insufficient evidence, we must uphold a jury verdict unless the record lacks substantial evidence to support the charge. *State v. Liggins*, 524 N.W.2d 181, 186 (Iowa 1994). Substantial evidence is evidence which "would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). The jury may give to the evidence the weight it should receive. *Id.* We consider all of the evidence, not just the evidence supporting the verdict. *Id.* We review the evidence in the light most favorable to the State, "including

all legitimate inferences and presumptions which may be fairly and reasonably deduced from the evidence in the record." *Id.; State v. McDaniel,* 512 N.W.2d 305, 308 (Iowa 1994); *Parrish,* 502 N.W.2d at 3.

■ Upon our review of the record, we find that there is sufficient evidence of David's knowledge and constructive possession of marijuana to support the convictions. The jury could find from the evidence that David is an owner with possession and control of the house and property where the marijuana was seized. He was living in the house in 1992 prior to his incarceration. The house utilities were placed in his name at his request in February; and when the utilities were turned off in August, he received the refund. No one lived in the house after David was incarcerated in June. The house was locked and David knew it would not be heated during the winter of 1992–93.

A large quantity of marijuana was found in boxes that contained mail addressed to him at the house location, and other books, magazines, and writings with his name on them. The evidence contained in the boxes where the marijuana was concealed links David with the marijuana. *See People v. Lemble,* 103 Mich.App. 220, 223, 303 N.W.2d 191, 193 (1981) (holding that there was sufficient evidence of possession of cocaine where cocaine discovered in an apartment occupied by the defendant and his girlfriend was found in a box which also contained personal papers of the defendant). Although David was not the sole owner of the property and he had occupied the house with his brother prior to their incarceration, there was no evidence that anyone other than David had exercised control of the premises at the time of the search. There is sufficient evidence to establish David knowingly possessed the marijuana.

■ We also find there is sufficient evidence of intent to deliver and manufacture. The large amount of marijuana found on the premises together with the uniformity of the packaging of the marijuana into "baggies" is a sufficient basis upon which to find intent to deliver. *See State v. Luter,* 346 N.W.2d 802, 809 (Iowa 1984), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984) ("Relevant considerations [of intent to deliver] include manner of packaging the substance; presence of weighing devices; and existence of other paraphernalia commonly used in drug dealing."). The jury could find intent to manufacture from the existence of sixteen baggies of "manicured" marijuana and the testimony that the growing marijuana plants appeared to have been cultivated. Because of the size of some of the plants and the absence of any other marijuana plants in the neighborhood, the jury could infer David had planted and cultivated them. An experienced narcotics investigator concluded the larger marijuana plants were more than six months old with the largest plant over one-year old. The quantity of the marijuana seized would justify a finding of possession or manufacturing of marijuana with intent to deliver to others.

We hold there was substantial evidence to convict David on all counts.

## V. *Motion to Suppress.*

David alleges three reasons the denial of his motion to suppress was in error. First, he asserts the warrant affidavit contained a false statement which was either purposefully untruthful or made with reckless disregard for the truth. Second, he claims there was no probable cause for the search. Third, he argues that the warrant was obtained based on an improper search of the curtilage surrounding his house.

David challenges officer Oster's statement in the affidavit that officers Sheets and Wray advised him they had received information about the Simpson brothers using and dealing in marijuana and that they possibly started the seedlings in the basement. Officer Sheets testified that he did not recall telling officer Oster information about the Simpson brothers' dealing in marijuana or possibly starting seedlings in the basement. He did report that windows in the basement of the house were boarded up. He testified that he had talked to several individuals about the Simpson brothers' use of marijuana and was aware that David had been charged with simple possession of marijuana in the past. He could not recall if he had given this information to Oster. Officer Wray did not

# 634

testify, but the parties stipulated his testimony would be the same as officer Sheets.

▮ Where a defendant establishes by a preponderance of the evidence that an affiant made a false statement in a search warrant affidavit knowingly and intelligently, or with reckless disregard for the truth, the Fourth Amendment requires the statement be dropped from the affidavit and probable cause determined on the basis of the remaining contents. *State v. Groff,* 323 N.W.2d 204, 206 (Iowa 1982) (adopting *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978)). The inquiry is limited to a determination of whether the affiant was purposefully untruthful with regard to a material fact in his or her warrant affidavit, or acted with reckless disregard for the truth. *Niehaus,* 452 N.W.2d at 186. Reckless disregard for the truth can be proven in two ways: (1) by showing directly that the affiant had serious doubts as to the veracity of the statement or (2) by inference from circumstances evidencing obvious reasons to doubt the veracity of the statement. *Id.* (citation omitted).

▮ Upon our de novo review of the record we do not find that officer Oster was purposefully untruthful or made the statement with reckless disregard for the truth. He testified that he did receive the disputed information from officers Sheets and Wray. He stated:

I remember specifically one two-way phone conversation with both Sheets and Wray on one side of the conversation and myself being on the other. And I asked the questions about any information they had ever heard about or obtained themselves in reference to short-time traffic or known associates using marijuana that they associated with the Simpson brothers. And [when I prepared my report I used] the information that they had given me, they noticed short-time traffic and that they had information that the Simpson brothers were involved in narcotics, specifically marijuana.

Officer Oster also testified he considered information from the two fellow officers to be reliable.

▮ Although the evidence is contradictory about what Sheets and Wray told Oster, the district court accepted Oster's testimony when it denied the motion to suppress. We defer to the trial court on matters of credibility of witnesses. *See* Iowa R.App.P. 14(f)(7). The fact the district court believes Oster's testimony makes this case unlike *State v. Seager,* 341 N.W.2d 420 (Iowa 1983). In *Seager* the affiant stated that another officer had seen an item of evidence at the place to be searched. The other officer indicated he had not told the affiant about the item. The affiant also testified that before the warrant was issued he had looked in the box alleged to contain the item, but did not recall seeing it. *Id.* at 427. The trial court specifically found the statement concerning the item to be deliberately false, and we determined on appeal that the record clearly showed the statement was at least made with a reckless disregard for the truth. *Id.* at 424–25.

David has not shown by a preponderance of the evidence that Oster made a false statement in the warrant affidavit knowingly and intelligently or with reckless disregard for the truth. Therefore, we will consider the disputed statement with the rest of the affidavit when we review for probable cause.

▮ David's claim that the search warrant was issued without probable cause also fails. The test for probable cause is whether a reasonable person would believe a crime was committed on the premises or that evidence of a crime could be located there. *State v. Godbersen,* 493 N.W.2d 852, 855 (Iowa 1992). Because warrants are preferred, we resolve all doubts in favor of their validity. *Id.* at 854–55. We give great deference to the determination of probable cause by a judge or magistrate. *Id.* The warrant affidavit stated that marijuana plants were growing in the rear of the house and that the largest appeared to be more than three months old. It also indicated the individuals known to have occupied the house were believed to be involved in using or dealing with marijuana and that David had a criminal history of a marijuana drug violation. We conclude there was a substantial basis to conclude probable cause to search the Simpson house existed.

■ David's claim that the warrant was based on an improper search of the curtilage surrounding his house was not preserved for appeal. The issue was not raised in the district court and therefore will not be considered on appeal. *See State v. Taylor*, 310 N.W.2d 174, 178 (Iowa 1981) ("Constitutional issues not presented to trial court cannot be presented for the first time upon appeal."). In holding the issue was not preserved, we are not suggesting it had merit. The marijuana plants were visible from the alley and from adjacent properties. There was no reasonable expectation of privacy. We therefore conclude that it was proper to deny David's motion to suppress.

## DECISION OF COURT OF APPEALS AND JUDGMENTS OF DISTRICT COURT AFFIRMED.

All justices concur except TERNUS, J., who dissents, and is joined by LAVORATO, NEUMAN and SNELL, JJ.

TERNUS, Justice (dissenting).

I wholeheartedly agree with the majority that an instruction on the permissible inferences which support a finding of constructive possession is unnecessary and undesirable.[1] However, if one is given, as was done here, the instruction must be a correct statement of the law. Because the instruction given here was not, I respectfully dissent.

The defendant accurately pointed out to the trial court that the constructive possession instruction was an incomplete statement of the law at best and an incorrect statement of the law at worst. Because I believe that the majority's opinion confirms that this court no longer adheres to the principles set out in *State v. Reeves*, 209 N.W.2d 18 (Iowa 1973), I begin with a discussion of that case.

In *Reeves*, we were required for the first time to decide what constitutes "possession" of a drug within the meaning of our criminal statutes. *Reeves*, 209 N.W.2d at 21. We identified three elements the State is required to prove: (1) the defendant exercised "dominion and control (i.e., possession) over the contraband"; (2) the defendant had knowledge of the presence of the drug; and (3) the defendant knew the substance was an illegal drug. *Id.* at 21, 23.

After reviewing rules from other states, we concluded in *Reeves* that the State is not required to prove actual possession; proof of constructive possession will suffice. *Id.* at 21–24. In other words, the "dominion and control" of the drug required for possession does not mean the drug "needs to be found on [the defendant's] person." *Id.* at 22. It is enough that the defendant "maintains control or a right to control" the drug. *Id.* Control of the drug or the right to control it in the absence of actual possession constitutes constructive possession. *Id.*

The court also discussed in *Reeves* the circumstances under which such control or right to control, i.e., constructive possession, may be proved. We concluded that there are two factual scenarios under which knowledge of the presence of drugs and the ability to

---

1. The majority correctly points out that "instructions on certain inferences may involve selective comments on the evidence by the trial court." This criticism is particularly true in the context of constructive possession. Whether constructive possession exists depends on the peculiar facts of each case. *State v. Harris*, 647 So.2d 337, 339 (La.1994). Many factors may support a finding that an accused had knowledge of the presence of drugs and the right to exercise control over them in addition to access and control of the place and premises where the drugs are found. *See Villegas v. State*, 871 S.W.2d 894, 896–97 (Tex.Ct.App.1994). Other factors include incriminating statements made by the defendant, incriminating actions of the defendant upon the authorities' discovery of the drugs, the location of the drugs among or near the defendant's personal belongings, the defendant's fingerprints on the packages containing the contraband and any

other circumstance which links the defendant to the drugs. *See* Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Premises of Which Defendant Was in Nonexclusive Possession*, 56 A.L.R.3d 948 (1974) (hereinafter "Short Annotation"). Any inference of possession should be drawn from *all* of the circumstances. *Eaglin v. State*, 872 S.W.2d 332, 337 (Tex.Ct.App.1994). Thus, the wiser approach is to avoid giving an instruction on the inferences to be drawn from selected evidence. *State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992) (instruction on evidence giving rise to inference of constructive possession reversible error because it "was not a balanced instruction on the various relevant factors bearing on the jury's determination of the disputed possession issue but rather was one which singled out and unfairly emphasized one factor, one piece of the circumstantial evidence, bearing on that determination....").

maintain control over them may be inferred. "If the *premises* on which such substances are found are in the *exclusive* possession of the accused," the jury may infer constructive possession. *Id.* at 22, 23 (emphasis added). We specifically noted that *joint* possession of the *premises* was not sufficient to support an inference of control or knowledge of the drugs. *Id.* at 23; *accord United States v. Morrison,* 991 F.2d 112, 115 (4th Cir.1993); *White v. State,* 886 S.W.2d 876, 877 (Ark.Ct. App.1994); *State v. Mercado,* 887 S.W.2d 688, 691 (Mo.Ct.App.1994); *Puente v. State,* 888 S.W.2d 521, 526 (Tex.Ct.App.1994); *see generally* Short Annotation, 56 A.L.R.3d at 957–58 & Supp.1994 at 67–68 and cases cited therein.

The second situation in which we recognized an inference of possession was "when the contraband is found in a *place* which is *immediately and exclusively* accessible to the accused and subject to his [joint or sole] dominion and control." *Reeves,* 209 N.W.2d at 22 (emphasis added); *accord State v. Wiley,* 366 N.W.2d 265, 270 (Minn.1985) (requiring exclusive access); *Marshall v. State* 110 Nev. 1328, 885 P.2d 603, 606 (1994) (applying same rule stated in *Reeves* ); see *Villegas,* 871 S.W.2d at 896 (where accused is not in *exclusive* control of place where contraband found, there must be additional evidence to prove possession). It is important to note that this second scenario focuses on the *place* where the drugs are found as contrasted to the *premises* in which they are found.

These two rules and the differences between them are logical and reasonable. When we decided *Reeves,* we apparently believed that if drugs are "immediately and exclusively" accessible to the defendant, it is fair to impute knowledge and control of the drugs to the accused even though the accused shares dominion and control over the place or premises where the drugs are found. Stated conversely, we concluded that if the facts merely show joint dominion and control over the place or premises where the drugs are found, an imputation of knowledge and control would not be fair unless the defendant has immediate and exclusive access to the drugs.

These rules strike a balance between two competing considerations. We want to convict persons guilty of drug offenses even though they are not caught "red-handed" with the drugs on their person. *State v. Florine,* 303 Minn. 103, 226 N.W.2d 609, 610 (1975) ("purpose of constructive-possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession"); Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not,* 58 Va.L.Rev. 751, 761–62 (1972). However, we also want to protect innocent bystanders from being convicted for drug offenses merely because they were in the wrong place at the wrong time. *See Reid v. State,* 212 Ga.App. 787, 442 S.E.2d 852, 853 (1994) (mere presence at the scene of a crime is insufficient to support a conviction of possession); *State v. Reynaga,* 643 So.2d 431, 436 (La.Ct.App.1994) (same); *Eaglin,* 872 S.W.2d at 336 (same). I think the principles set forth in *Reeves* accomplish both objectives.

Unfortunately, we have not been entirely faithful to these principles. The instruction approved by the majority in this case illustrates how far we have strayed. I think we should either acknowledge that we have modified the rules enunciated in *Reeves* and articulate a reason for doing so or we should stand by those rules and reverse the defendant's conviction. Because I am convinced that the law set forth in *Reeves* is sound, I would reverse the defendant's conviction. The legal basis for my position follows.

In this case the court correctly instructed the jury that the State had to prove that the defendant knowingly possessed marijuana and that the defendant knew that the substance he possessed was marijuana. The court also correctly instructed the jury that possession could be actual or constructive and that constructive possession is shown by proof that the defendant knows of the presence of the drug and has the authority or right to control the drug. The jury was also correctly told that control of the drug could be joint or sole.

The problem in this case arose when the court added instruction no. 20 in an attempt

to explain the circumstances under which a right to control the drug, i.e., constructive possession, could be inferred. The court instructed the jury that "[c]onstructive possession occurs when the defendant maintains control or has a right to control the place where the controlled substance is found." The court goes on to say that constructive possession may be inferred "when the substance is found in a place which is accessible to the defendant and is subject to his dominion and control, or the joint dominion and control of the defendant and another." My interpretation of this instruction is that the jury can find the defendant controlled the drug or had the right to control the drug, i.e., constructively possessed the drug, upon proof that the drug was found in a place that was accessible to the defendant and proof that this place was subject to his joint or sole dominion and control.

I agree with the defendant that instruction no. 20 erroneously allowed the jury to find the defendant possessed the marijuana upon proof that the defendant jointly controlled the house in which the marijuana was found. At a minimum, the court should have given the defendant's requested instruction that constructive possession could not be proved by showing that the drugs were found on *premises* over which the defendant had joint dominion and control. Without such an instruction the jury could easily conclude that the "place" where the drugs were found was the house, not some more localized site within the house/premises.

That the jury could so interpret the instruction on constructive possession is well illustrated by the comments of the trial judge and the county attorney which showed that they interpreted the instruction in this way. The additional instruction requested by defendant's counsel stated that the jury could not infer knowledge and control of the contraband upon mere proof that the defendant had joint control of the premises. The county attorney resisted giving defendant's requested instruction because it was "inconsistent with paragraph two of [the constructive possession instruction]" and the two instructions together would not make sense. The trial court agreed with these comments, not-

ing that the requested instruction was inconsistent with the court's instruction on constructive possession. The defendant's attorney responded by stating that paragraph two of the court's instruction was "an incorrect statement of the law."

He was right and so were the county attorney and the trial judge. The defendant's requested instruction was inconsistent with the court's instruction. The court's instruction allowed the jury to infer possession upon proof that defendant had joint dominion and control of the house where the marijuana was found. The defendant's requested instruction told the jury just the opposite—possession could not be inferred from joint dominion and control; exclusive control of the house is required. If we are true to our holding in *Reeves*, we must agree with defendant that the court's instruction on constructive possession was wrong. That is because in *Reeves* we held that "where the accused has *not* been in *exclusive* possession of the premises but only in joint possession, knowledge of the presence of the substances on the premises and the ability to maintain control over them by the accused *will not be inferred* but must be established by proof." *Reeves*, 209 N.W.2d at 23 (emphasis added).

The harm flowing from the court's incorrect instruction and refusal to give the defendant's requested instruction is aggravated by the fact that the court's instruction was incorrect for an additional reason. As noted earlier, the court instructed the jury that constructive possession could be inferred by proof that the drug was found "in a place which is accessible to the defendant" and subject to his sole or joint dominion and control. The original statement of this rule in *Reeves* required proof that the place was "immediately and exclusively accessible" to the defendant. *Reeves*, 209 N.W.2d at 22; accord *State v. Pierce*, 240 N.W.2d 678, 679 (Iowa 1976) (applying standard that constructive possession may be imputed when the drugs are found "in a place which is *immediately and exclusively* accessible to the accused") (emphasis added). By eliminating the "immediate and exclusive access" requirement, it becomes even more crucial for the jury to understand that mere proof of

**638**

joint control of the premises is not sufficient to infer knowledge and control of drugs found on the premises.

The instruction on constructive possession was wrong.[2] The trial court was adequately alerted to this problem by defense counsel's objections and requested instruction. Therefore, I would reverse and remand for a new trial. *See Olson,* 482 N.W.2d at 216 (erroneous instruction on constructive possession required reversal even though there was enough circumstantial evidence to support a conviction of possession of marijuana). I would instruct the trial court on remand to give only Uniform Jury Instruction 200.47, the possession instruction. The trial court should not instruct on inferences but instead should allow the attorneys to argue the evidence in support of their positions.

LAVORATO, NEUMAN, and SNELL, JJ., join this dissent.

---

**2.** To the extent that *State v. Rudd,* 454 N.W.2d 570 (Iowa 1990), is inconsistent with this conclu- sion, we should overrule it.