# IN THE COURT OF APPEALS OF IOWA

No. 23-1739
Filed October 30, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BENJAMIN JAMES WORK,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Harrison County, Margaret Reyes, Judge.

A defendant appeals from his convictions for sexual exploitation by a school employee, lascivious conduct with a minor, and indecent contact with a child. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

The spring play for students at a western Iowa school in March 2022 was "Game of Tiaras," with a cast of Disney princesses. The students' music teacher, Benjamin Work, directed the play. While the play was in production, Work measured the female student actresses for costumes—by themselves, with their shirts off, in a room with black construction paper covering the window and a hidden video camera. Work was charged with sixteen crimes involving eight minors: seven counts of sexual exploitation by a school employee, six counts of lascivious conduct with a minor, and three counts of indecent contact with a child. He waived a jury trial and was found guilty on all counts after a bench trial.

Work appeals, challenging the sufficiency of the evidence for three of the sexual exploitation convictions, all the convictions for lascivious conduct with a minor, and one conviction for indecent contact with a child. He also claims the district court abused its discretion in limiting his cross-examination of one minor victim about her character for truthfulness. We reject the evidentiary claim and find all but one of the challenged convictions is supported by substantial evidence.

## I. Background Facts and Proceedings

Benjamin Work taught K-12 music classes and directed the band, choir, and theater programs at his local school. Some of Work's students thought of him as the "cool teacher" because he let them eat, curse, and vape in his classroom. In this relaxed setting, Work made disturbing sexual comments to his mostly female students. One student testified about a comment that Work made when she picked up a screw from the floor: "I went to give it to him, and I said, I found—like, you want a screw? And I didn't mean it in any way sexual . . . at all, and he's like, I

mean, . . . if you really want to. . . ." Work would often tell his students "about how if we felt comfortable enough or if we were too hot, we could just take off our shirt because girls have done it in his classroom before." Or when his students were changing into their marching band uniforms, "he would always bring up one story about one of the female people at his old school not wearing any clothes underneath the uniform and getting, like completely naked inside the classroom."

Work's behavior escalated beyond sexual innuendos during the 2021-2022 school year. For the high school spring play, which the students performed in March 2022, Work chose a piece called "Game of Tiaras"—a mash-up of the HBO series, *Game of Thrones*, and Disney princesses. The students who were cast as princesses in the play were outfitted in corset-style tops that Work sewed himself. Work measured some of the students for their costumes weekly. He converted practice rooms in the school's music department into changing rooms, taping black construction paper over the doors' windows. A typical measuring session, as described by the students at trial, involved Work going into the room with the student and shutting the door behind him. He would ask the student to take her shirt and bra off—as much as she felt comfortable doing—to get the most accurate measurements. Most students took their shirts off and some took their bras off too. When the students were standing in front of him, either in their bra or topless, Work would wrap the measuring tape around their breasts. Sometimes he let the student hold the measuring tape between their breasts, while other times he held it. Work also measured the students' legs, at times asking them to take off their pants, even if they were wearing leggings. The students were uncomfortable

during these measuring sessions, but some thought costumes had to be measured that way, while others were too scared to get a teacher into trouble.

In April, a teacher overheard some students talking about Work and an investigation was launched. Law enforcement executed a search warrant at the school and found a video camera in Work's desk drawer. They discovered several videos of a female student changing in one of the practice rooms on the camera's SD card. From the angle of the camera, the student who had been recorded thought that Work must have hidden the camera in a "holey crate" on top of one of the filing cabinets in the room.

Work was arrested and charged with seven counts of sexual exploitation by a school employee, in violation of Iowa Code section 709.15(3)(a)(1) (2022);[1] six counts of lascivious conduct with a minor, in violation of section 709.14; and three counts of indecent contact with a child, in violation of section 709.12(1)(b). Work pleaded not guilty and waived his right to a jury trial. At his bench trial, all eight victims testified about their individual experiences with Work. Following the trial, the district court entered a detailed written ruling that examined the evidence supporting each count. After doing so, the court found Work guilty as charged. The court imposed consecutive sentences on each conviction, for a total term of imprisonment not to exceed forty-seven years.

---

[1] The trial information alleged the various sexual exploitation counts occurred between January 2021 and March 2022. We have used the version of section 709.15(3) in effect at the end of that date range. Although there were amendments to section 709.15(3) while the acts were occurring, they do not affect our analysis.

Work appeals, claiming (1) the sexual exploitation convictions involving the victims in counts five, nine, and sixteen "were not supported by evidence of inappropriate touching"; (2) none of the convictions for lascivious conduct with a minor were supported by proof that the victims were never married; (3) the age element was not established for the indecent contact conviction in count three; and (4) the district court abused its discretion by not allowing Work to cross-examine a victim "with specific instances of conduct relating to her character for truthfulness." The State concedes the third issue but contests the rest.

## II.    Analysis

### A.    Sufficiency of the Evidence

"We review a claim of insufficient evidence in a bench trial just as we do in a jury trial." *State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019). "If the verdict is supported by substantial evidence, we will affirm." *Id.* (citation omitted); *accord State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020) (noting that in "jury-waived cases, the findings of fact have the effect of a special verdict," which is "binding on us if supported by substantial evidence"). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational [factfinder] that the defendant is guilty beyond a reasonable doubt.'" *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (citation omitted). Because the question is simply whether the evidence was sufficient to support the conviction, "our review of challenges to the sufficiency of the evidence is for errors at law." *Myers*, 924 N.W.2d at 872.

### 1.    Sexual Exploitation by a School Employee

Work was charged with violating Iowa Code section 709.15(3)(a)(1):

3. a. Sexual exploitation by a school employee occurs when any of the following are found:

(1) A pattern or practice or scheme of conduct to engage in any of the conduct described in subparagraph (2).

(2) Any sexual conduct with a student for the purpose of arousing or satisfying the sexual desires of the school employee or the student. Sexual conduct includes but is not limited to the following:

(a) Kissing.

(b) Touching of the clothed or unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals.

(c) A sex act as defined in Section 702.17.

b. Sexual exploitation by a school employee does not include touching that is necessary in the performance of the school employee's duties while acting within the scope of employment.

Iowa Code § 709.15(3). Under section 709.15(6),

the crime of sexual exploitation by a school employee is enhanced from an aggravated misdemeanor to a class "D" felony when the school employee engages in a "pattern or practice or scheme of conduct to engage in any of the conduct" described in Iowa Code section 709.15(3)(a)(2), which prohibits sexual conduct with a student for the school employee's or student's sexual gratification.

*Wickes*, 910 N.W.2d at 568–69; *accord* Iowa Code § 709.15(6)(a).

Work challenges the sufficiency of the evidence supporting the district court's guilty verdicts on the counts involving victims M.B. (Count 5), A.B. (Count 9), and J.W. (Count 16). On those counts, the court found that Work "touched M.B.'s clothed breasts and inner thighs," "touched A.B.'s clothed and unclothed breast," and "touched J.W.'s clothed breast," all with the specific intent to arouse or satisfy his sexual desires and "as part of a pattern or practice or scheme of conduct." Work argues these counts "were not supported by evidence of

inappropriate touching" because "[n]one of these witnesses testified to Work touching inappropriate areas of their bodies."[2]  We disagree.

When viewing the evidence in the light most favorable to the State, we must draw all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence."  *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).  "Inferences and presumptions are a staple of our adversary system of fact-finding."  *State v. Simpson*, 528 N.W.2d 627, 632 (Iowa 1995) (citation omitted). The fact finder "may consider all of the evidence and derive any reasonable inferences therefrom."  *Id.*  The ultimate question is whether the evidence "supports the finding actually made, not whether the evidence would support a different finding."  *Jones*, 967 N.W.2d at 339.  Here, legitimate inferences reasonably drawn from the evidence support the district court's findings that Work touched M.B., A.B., and J.W. as prohibited by section 709.15(3)(a)(2)(b).

Starting with M.B., who quit the play after Work measured her one time, she testified that Work went into the changing room with her and closed the door behind him.  She was cast as a peasant and planned to wear a loose top for her costume.

---

[2] In making this argument, Work states he is "aware that [s]exual [e]xploitation can be proven by either touching the complainants inappropriately or by engaging in sexual conduct with them" and that "[s]exual conduct can encompass more than inappropriate physical contact as long as it is done with the requisite sexual intent." *See Wickes*, 910 N.W.2d at 569–70; *State v. Romer*, 832 N.W.2d 169, 181 (Iowa 2013).  But he argues that because the district court "did not distinguish between inappropriate physical contact and other potential instances of sexual conduct to support the charges herein, there is no alternative basis on which to find guilt." The State disagrees, arguing "it proved that Work also '[e]ngaged in sexual conduct' with" M.B., A.B., and J.W. and the court "made findings of fact that established that alternative basis for its verdict, even if it did not specifically link them to that element."  We need not resolve this dispute because we find sufficient evidence that Work touched these victims' clothed or unclothed breasts or thighs.

Yet Work asked her to take her sweater off for "more accurate measurements." M.B. complied. While she was facing him in just her bra and pants, M.B. said that Work measured her "waist and stuff himself." He gave her the end of the measuring tape to hold "right above [her] crotch and the middle of [her] breasts." Then, she said, he "wrapped it." M.B. testified that she felt "[v]ery uncomfortable" while Work was measuring her. A legitimate inference from this testimony is that, as the district court found, Work "measured down [M.B.'s] legs and in the middle of her breasts while he placed a measuring tape around her." *See, e.g.*, *State v. Stevens*, 719 N.W.2d 547, 552 (Iowa 2006) ("Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved." (cleaned up)). We accordingly find sufficient evidence supporting this count.

A.B.'s experience with Work was similar. She testified that Work told her a story during class about "a play where this girl had to do something" sexual for the director "to get a certain part," and he suggested that she would have to do the same to get her role in the play. A.B. was later cast as one of the princesses. Work measured her for her costume multiple times, and he secretly recorded her in the changing room. She testified there were a few times when Work followed her into the room to measure her and "then there was times where the corset wasn't fitting well, so he had gone and measured it more, made sure it fit, and he would measure around the breast area," which she said was uncomfortable. Sometimes Work would have her hold the measuring tape, while other times he

would hold it around her chest. A.B. said that she never thought these measuring sessions were okay: "I was very uncomfortable with it because it's weird changing in front of your teacher. That shouldn't be a normal thing for you to do." She also caught Work looking at her in a mirror that was in the room a few times while she was taking her corset off, which made her feel disgusted. We again find a legitimate inference from this testimony is that Work touched A.B. while measuring around her breast area. *See Jones*, 967 N.W.2d at 342 ("[T]he relevant inquiry is whether a fact finding is a legitimate inference 'that may fairly and reasonable be deduced from the record evidence.'" (citation omitted). So we affirm on this count as well.

That leaves us with the sexual exploitation count involving J.W., who only had one measuring session with Work. She explained that when she was fitted for her costume, Work was in the changing room with her, and "he would measure, like, your arms, waist and basically your whole body." She testified that Work "suggested that to get a better measurement I should take my shirt off, and I refused." So Work took her measurements with her clothes on. When asked what parts of her body Work measured, J.W. answered, "So he measured my waist, hips and, like, right up here (indicating)," using a long measuring tape that he put around her. From this testimony, the district court found that Work "placed a measuring tape around her waist, hips, and chest area over her clothes." While Work argues "[n]o clarification was provided" as to what part of J.W.'s body she motioned to when she said, "right up here," the court was there in the courtroom watching J.W. testify. And, from the context of the rest of her testimony, a legitimate inference is that J.W. was motioning to her chest. *See State v. Schmidt*,

588 N.W.2d 416, 419 (Iowa 1998) (finding sufficient evidence to support the trial court's findings of guilt based on inferences from "common sense, the context of the statements, and the totality of the circumstances").

Upon viewing the evidence in the light most favorable to the State, including all legitimate inferences and presumptions fairly drawn from that evidence, we find the evidence was sufficient to convince a rational trier of fact that Work was guilty of sexual exploitation in counts five, nine, and sixteen. *See Fordyce*, 940 N.W.2d at 425. We accordingly affirm those convictions.

### 2. Lascivious Conduct with a Minor

Work next claims that his six convictions for lascivious conduct with a minor are not supported by sufficient evidence because the State failed to prove the victims had never been married. In analyzing these counts, the district court started with the elements set out in uniform jury instruction 900.13 from the Iowa State Bar Association. The fifth element of that instruction requires the State to prove that "[a]t the time of the conduct, the victims were under the age of 18 and never married." While the court found that each victim was "under the age of 18 and never married," Work is correct that "[a]t no time during the trial did the State ever ask the complainants whether they had ever been married." The State argues that is because the statute doesn't require proof of marital status. We agree. *See, e.g.*, *State v. Meyers*, 799 N.W.2d 132, 147 (Iowa 2011) (setting out the elements of lascivious conduct with a minor, which did not include the minor's marital status).

"In Iowa all crimes are statutory." *State v. Hansen*, 55 N.W.2d 923, 923 (Iowa 1952). The elements of an offense are accordingly defined by the statute,

and the "burden is upon the State to prove every element essential to constitute the crime charged." *State v. Sinclair*, 987 N.W.2d at 466 (citation omitted).

Here, Work was charged with violating Iowa Code section 709.14(1)(a):

It is unlawful for a person eighteen years of age or older who is in a position of authority over a minor to force, persuade, or coerce that minor, with or without consent to disrobe or partially disrobe for the purpose of arousing or satisfying the sexual desires of either of them.

Our criminal code does not define the term "minor." *Cf.* Iowa Code § 702.5 (defining "child" to mean "any person under the age of fourteen years"). Iowa Code section 599.1(1), however, states that the "period of minority extends to the age of eighteen years, but all minors attain their majority by marriage." The uniform instruction cites this code section as authority for its listed elements. But in *State v. Garman*, 93 N.W.2d 105, 107 (Iowa 1958), our supreme court said "that emancipation by marriage as provided for in section 599.1 applies only to the civil concepts of minority and emancipation and not to criminal cases." In reaching this conclusion, the court in *Garman* reasoned that "it is as essential for the protection and welfare of both the child and the public that marriage should not exclude the child from the benevolent operation of the law." *Garman*, 93 N.W.2d at 106 (citation omitted); *accord City of Des Moines v. Reisman*, 83 N.W.2d 197, 199 (Iowa 1957) (observing that "[c]ertainly [a minor], by marriage, did not cease to be" a person under legal age). This makes sense.

But what do we do with the district court's use of the uniform instruction with this additional element? Normally, "[j]ury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims." *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020). This

doctrine "is premised on the failure to object to an incorrect statement of the law." *State v. Crawford*, 974 N.W.2d 510, 521 (Iowa 2022). So if a party "fails to alert the district court of the erroneous instruction, he cannot complain that the evidence was insufficient to support a legal proposition contrary to the one instructed to the jury. When that happens, we apply the law as set out in the instructions rather than the applicable law." *Id.* The same reasoning doesn't apply in a bench trial, as the court in *Baty v. Binns*, 354 N.W.2d 777, 779–80 (Iowa 1984) explained:

> Unlike a jury trial where the parties are apprised of the law of the case by means of the court's proposed instructions and required to object at a prescribed time in order to preserve error, a party in a nonjury proceeding may challenge an erroneous conclusion of law embodied in a final decision after the decision is rendered.

*See also State v. Anspach*, 627 N.W.2d 227, 231 (Iowa 2001) (stating that when a defendant challenges the sufficiency of the evidence "on appeal from a criminal bench trial, error preservation is no barrier"); *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) (describing the underpinnings of the law-of-the-case doctrine in terms of error preservation and waiver).

Under Iowa Rule of Civil Procedure 1.924, which applies to criminal proceedings, the court is required to "instruct the jury as to the law applicable to all material issues in the case." *See* Iowa R. Crim. P. 2.19(4)(g) ("The rules relating to the instruction of juries apply to criminal cases."). The court is further required to give preliminary and final drafts of the instructions to counsel before jury arguments, with "reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury." Iowa R. Civ. P. 1.924. "No other grounds or objections shall be asserted thereafter, or considered on appeal." *Id.* There are no similar requirements for instructions in bench trials. *Cf.* Iowa R. Crim.

P. 2.17(3) (requiring the court "[i]n a case tried without a jury" to "find the facts specially, separately state its conclusions of law, and render an appropriate verdict in open court and on the record"). Indeed, the court did not cite the uniform jury instruction at issue here, or express an intent to rely on it, until its written verdict. And neither party's closing briefs indicated the victims' marital status was at issue for these counts. Under these circumstances, we do not believe the law-of-the-case doctrine for unobjected jury instructions applies. *Cf. State v. St. Cyr*, No. 20-0628, 2021 WL 4891065, at *5 (Iowa Ct. App. Oct. 20, 2021) (noting that because a defendant on appeal did not challenge the accuracy of an offense's elements as set out in the district court's written ruling after a bench trial, "they become the law of the case").

We conclude the State did not have to prove the victims were not married for the court to find Work guilty of lascivious conduct with a minor under Iowa Code section 709.14(1)(a). Because that is Work's only challenge to these convictions, we affirm the guilty verdicts on the six counts of lascivious conduct with a minor.

### 3. Indecent Contact with a Child

Work next challenges his conviction on count three for indecent contact with D.H. He argues the "evidence was insufficient to establish that D.H. was under the age of 14 when the improper contact occurred." *See State v. Shearon*, 660 N.W.2d 52, 56 (Iowa 2003) (discussing the elements of indecent contact with a child). The State agrees. D.H. testified that she was born in February 2007, so she would have been fourteen in February 2021. But the inappropriate touching that D.H. described at trial occurred during preparations for the spring play in March 2022. As the State concedes, "[t]here was no evidence that Work touched

D.H.'s body before her 14th birthday" in February 2021.  We accordingly reverse Work's conviction on count three for indecent contact with a child and remand for dismissal of that charge.

**B.	Evidentiary Issue**

We review the district court's ruling on the admissibility of evidence under Iowa Rule of Evidence 5.608(b) for an abuse of discretion.  *State v. Greene*, 592 N.W.2d 24, 27 (Iowa 1999).  "Even if an abuse of discretion is found, reversal is required only when the abuse is prejudicial."  *Id.*; *see also* Iowa R. Evid. 5.103(a) ("Error may not be predicated upon a ruling [that] admits or excludes evidence unless a substantial right of the party is affected. . . .").  We find no prejudice here.

While cross-examining A.B., defense counsel asked,

> Q.  Have you ever said things to your friends just to get attention that weren't true?  A.  Say that again.
> Q.  For instance, did you tell them at one time that you had breast cancer?  A.  (No response.)
> Q.  Yes or no?  A.  Do I have to answer that?
> COURT: You have to answer the question that's been asked of you.
> WITNESS: Yes, I did.
> Q.  But it wasn't true, was it?  A.  No, it wasn't.  I was just a stupid kid, okay?
> Q.  Would you ever steal your friends' phones?  A.  Excuse me?

The prosecutor then objected to "improper character impeachment" and argued a nexus had not been "laid to the statements given relating to this matter."  The court sustained the objection but allowed defense counsel "to ask a different question . . . that will lay that foundation."

So defense counsel continued, "Did you ever claim you were pregnant when you weren't?"  The prosecutor lodged another objection, which the court again

sustained. Defense counsel then asked, "But you will admit that on occasion over the years you've said things to get attention that weren't true?" A.B. answered: "Yes, I've made lies, but I've changed, okay? I'm not who I was before. I've lost so many friends throughout the years, and I regret the things I've done, okay, but I'm not who I was anymore."

On appeal, Work argues the court erred in "cutting off [this] line of questioning" and not allowing A.B. to answer the phone and pregnancy questions as a challenge her character for truthfulness. *See* Iowa R. Evid. 5.608(b)(1) (permitting cross-examination of a witness regarding specific instances of conduct to attack the witness's character for truthfulness if the conduct is "probative of the character for truthfulness or untruthfulness" of the witness). The State argues that Work did not preserve error on this claim because he never made an offer of proof. *See* Iowa R. Evid. 5.103(a)(2); *State v. Lacey*, 968 N.W.2d 792, 806 (Iowa 2021). We find the record here "adequately demonstrates the issue raised," *State v. Schutz*, 579 N.W.2d 317, 319 (Iowa 1998), with the substance of the excluded evidence apparent from the context. *See* Iowa R. Evid. 5.103(a)(2); *State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995) (finding no need for an offer of proof to preserve error where the question sought a "yes" or "no" answer, making the content of the offer of proof "readily apparent"). But we agree with the State that any error was harmless.

The harmless error standard under rule 5.103(a) "requires us to presume prejudice and reverse unless the record affirmatively establishes otherwise." *State v. Mayfield*, No. 11-1088, 2012 WL 3860452, at *3 (Iowa Ct. App. Sept. 6, 2012) (citing *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004)). "The record may

affirmatively establish otherwise where there is overwhelming evidence of guilt or where the same evidence is otherwise clear in the record." *Id.* Work argues the questions that defense counsel was prohibited from asking "were probative of A.B.'s truthfulness or untruthfulness." Yet A.B. admitted that she lied about having breast cancer and that she had said things that were not true to get attention. So the district court was aware of A.B.'s character for truthfulness even without hearing her answers to the questions about the phone stealing and pregnancy lie. *See, e.g., State v. Havemann*, 516 N.W.2d 26, 28 (Iowa 1994) (finding excluded impeachment evidence "was cumulative to other evidence of [the witness's] character and credibility"). And, as the State argues, A.B.'s testimony about how Work measured her was "consistent with and bolstered by credible testimony from other girls that described Work doing the same things when measuring *them*, too." We accordingly reject Work's request for a new trial on this ground.

## III. Conclusion

We affirm all Work's convictions, except for his conviction on count three for indecent contact with a child. Because that conviction was not supported by substantial evidence, we reverse and remand for dismissal of that count.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**