**Robert Tate KASOLD, Petitioner,**

v.

**Harold CARDWELL, Warden, Arizona State Prison, Respondent.**

**No. CIV 74–541 PHX–CAM.**

United States District Court,
D. Arizona.

April 29, 1975.

---

Derickson & Kemper, Phoenix, Ariz., for petitioner.

Bruce E. Babbitt, Atty. Gen. of Ariz., Phoenix, Ariz., for respondent.

## ORDER

MUECKE, District Judge.

It is hereby ordered that this Court having received and considered petitioner's petition for writ of habeas corpus dated August 7, 1974; and having received and considered the respondent's response to said petition dated September 20, 1974; and having on April 7, 1975, considered the evidence and oral argument relating to the petition in a hearing coming regularly before this Court, finds that the petition should be granted.

The relevant facts are agreed upon by petitioner and respondent. In December of 1972, a female student at North Phoenix High School in Phoenix, Arizona, reported to school officials that she had earlier had sexual relations with petitioner, Robert Tate Kasold, who at that time was a teacher at the school. The female student reported that another female student had also had sexual relations with petitioner. Both of the female students were under eighteen years of age at the time of the reported incidents. School officials relayed this information to the Phoenix Police Department and a detective conducted an investigation and interviewed both of the girls involved. On January 2, 1973, the detective went before a magistrate to secure a search warrant on the basis of the following affidavit:

"Two 17 year old female students from North Phoenix High School have revealed that they were sexually involved with Mr. Robert Kasold, a teacher at the school. Their involvement lasted from March until July, 1972. During this time the suspect took numerous photographs of the victims and himself involved in sexual activity.

Your affiant is a police detective for the City of Phoenix . . . and has recently been involved in an investigation concerning illicit sexual activity

involving a high school teacher, Robert Kasold. During the course of this investigation, your affiant personally interviewed two 17 year old females who are students at North Phoenix High School where Mr. Kasold is employed as a teacher.

Both of these young girls told your affiant that they had been engaged in sexual activities with Mr. Kasold. This activity included hetrosexual (sic) intercourse, fellatio, cunnilingus and sodomy. This activity took place in a house trailer located in the 1600 block of East Thomas, in Mr. Kasold's classroom and in his vehicle. During these periods of sexual activity, Mr. Kasold took photographs depicting the activity, in addition Mr. Kasold caused these two students to write stories concerning their sexual life. Frequently during the sexual activity, Mr. Kasold used a blue and white vibrator to stimulate the girls sexually.

Also during some of the periods of sexual activity, the girls themselves took photographs. Some of these photographs were removed by the girls and subsequently shown to a classmate.

These girls further told your affiant that Mr. Kasold keeps some of the photographs in his classroom. He keeps others in his vehicle and others in his apartment located at 5105 North 40th Street, Apartment E–425. During the course of this investigation, your affiant has personally determined that Mr. Kasold is, and in fact, a teacher employed by North Phoenix High School and that he does, in fact, now reside at 4105 North 40th Street, Apartment E–425, and further that Mr. Kasold possesses a vehicle that is a 1968 Citron (sic) bearing Arizona License MMD–942.

Further investigation into this matter by your affiant has revealed that prior to this time Mr. Kasold's activity as it relates to dealing with his students has been the subject of concern by various school administrators and that he has been the subject of psychological counselling.

Further investigation has revealed that Mr. Kasold has spent an unusually large amount of time engaging in extracurricular activities with the students.

Your affiant has personally spent several hours in meticulously examining statements give by these two females and feels confident that the allegations by the girls in this matter are true.

On January 2, 1973, one of the young girls was examined by means of a polygraph regarding the above allegations. The results of this polygraph indicate that she has been truthful in her statements.

Investigation also revealed that suspect has written stories about his sexual activity and has pursuaded (sic) the young girls to write the stories describing their sexual activity. This writing is believed to be in the possession of the suspect at this time."

Proceeding on the basis of a search warrant issued on the above affidavit, police officers, on the same date the warrant was issued (January 2, 1973), searched petitioner's apartment and seized photographs, books and magazines, a roll of film, and other items. All of the items seized dealt with sex.

Petitioner was involved in two separate trials in the state court, where the evidence in question was used. In the child molestation trial, Maricopa County Superior Court Cause No. CR–74621, the evidence seized under the warrant was used at trial and was essential to the basis of the conviction. The sentence imposed in the child molestation trial was not less than twenty years, nor more than life imprisonment. In the second degree rape trial, Maricopa County Superior Court Cause No. CR–74620, the evidence was not used at trial, however, it was used at petitioner's aggravation/mitigation hearing, and petitioner was sentenced to not less than

fifteen years, nor more than life imprisonment on each of six counts—the sentences to run concurrently. The Arizona Supreme Court affirmed petitioner's child molesting conviction in State v. Kasold, 110 Ariz. 558, 521 P.2d 990 (1974); and petitioner's second degree rape conviction in State v. Kasold, 110 Ariz. 563, 521 P.2d 995 (1974), thereby upholding the search here in question.

Petitioner, at all appropriate times, moved to suppress the evidence seized claiming that the search was legally infirm since the warrant was not issued on a showing of probable cause. Petitioner's primary claim is that the affidavit presented to the magistrate related information which was observed by the female students at least five months prior to the issuance of the warrant, and that, therefore, the observations were too stale to constitute probable cause. Petitioner also claims that because he had changed his residence since the girls observed the evidence, this change of location worked against a finding of probable cause, i. e., the girls had not observed the evidence in the apartment where the petitioner lived at the time of the search.

■■ In the hearing on the motion to suppress in the state court, the detective who had presented the affidavit to the magistrate testified as to some information that he had related to the magistrate which was not in the affidavit. R.T. Vol. 1 at 13–18. It is undisputed that this other information before the magistrate was not recorded. The Supreme Court of the State of Arizona in The State of Arizona v. Delma Robertson Ariz., 531 P.2d 1134 filed February 24, 1975, held that under A.R.S. § 13–1444(C), if information in addition to that in a signed affidavit is to be considered by a magistrate for making a determination of probable cause, it must be under oath and it must be recorded. The court made it clear that this is not a new interpretation of the law and recognized that this law became effective August 13, 1971, which would cover the events of this case. Therefore, the search must stand or fall on the affidavit. Even if the unrecorded information were considered, there would still be an absence of probable cause since this information doesn't relate to sexual activity, photographs depicting sexual activity, or anything else which can objectively be connected with the warrant in this case.

The parties have agreed that the police did not sit on the information once received. The police acted with dispatch in securing a warrant when they were given the information. Thus, there is no allegation or evidence of police misconduct. Therefore, the primary issue here is whether the information upon which the search warrant was based was too stale to constitute probable cause. The observations of the female students were over five months old, i. e., from the last time the girls saw the items sought to be seized until the time of the search.

Petitioner brings numerous cases to the Court's attention on the issue of whether stale information can support a search warrant. See Annot., 100 A.L.R. 2d 525 (1965). In Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968), the court held:

"The most convincing proof that the property was the possession of the person or upon the premises of some remote time in the past will not justify a present invasion of privacy. There must be reasonable grounds for believing that the immediate search for which authority is sought may be fruitful."

The Court in Durham, supra, in Footnote 6, stated:

"The length of the time lapse alone is not controlling since even a brief delay may preclude an inference of probable cause in some circumstances while in others a relatively long delay may not do so. Nonetheless, there are obviously some limits. In Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173, 177 (1963), Judge Wright noted 'that the Government

could cite, and we could find, no case which sustained a search warrant issued more than 30 days after finding of the evidence which constituted the basis for the search.' It has also been stated that 'a lapse of more than 7 weeks has always rendered the search warrant nugatory.' Annot., 100 A.L. R.2d 525, 527 (1965)."

The case of United States v. Neal, 500 F.2d 305, 309 (10th Cir. 1974), held:

"The Fourth Amendment contemplates that probable cause for the issuance of a search warrant must exist at the time the search is sought to be made. Probable cause existing at some time in the past will not suffice unless circumstances exist from which it may be inferred that the grounds continued to the time the affidavit was filed."

Therefore, the affidavit must be examined to determine whether there are facts therein stated "from which it may be inferred that the grounds (for the search) continued to the time the affidavit was filed." A fair reading of the affidavit reveals no facts from which it may be inferred that the grounds for the search continued until the time the affidavit was filed. It is undisputed that probable cause for the search in question existed at some time in the past. This, however, is not dispositive of the issue before this Court, i. e., whether the affidavit contained facts which could support a present search of petitioner's premises. One paragraph of the affidavit states in a conclusional manner:

"These girls further told your affiant that Mr. Kasold keeps some of the photographs in his classroom. He keeps others in his vehicle and others in his apartment located at 5105 North 40th Street, Apartment E–425."

█ The search in question is the search of petitioner's apartment at 5105 North 40th Street. There is nothing in the affidavit to indicate that the girls had even been to petitioner's new ad-

dress on North 40th Street, since the activities complained of occurred "in the 1600 block of East Thomas." Further, there are no facts to support the statement that petitioner kept certain photographs in his apartment. How was this knowledge obtained? When was it obtained? These are questions for which the affidavit provides no answer. When the privacy of an individual is to be invaded, vague statements and innuendo cannot take the place of specific facts which can be reviewed by an objective tribunal. *See* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Another paragraph in the affidavit states:

"Further investigation into this matter by your affiant has revealed that prior to this time Mr. Kasold's activity as it relates to dealing with his students has been the subject of concern by various school administrators and that he has been the subject of psychological counselling."

The respondent would have this statement constitute a finding of a continuous course of conduct. The statement, however, lends no support for the search in question since it in no way deals with the specifics of this case. The statement is vague and relates nothing about petitioner's sexual activity or the photographs which were seized.

This Court is aware of the teachings of United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), where the United States Supreme Court made it clear that courts reviewing the sufficiency of search warrants cannot demand "technical requirements of elaborate specificity once exacted under common law pleadings . . . ." In the facts at bar, however, this Court is not invoking a procedural technicality, but is recognizing the absence of any information which could

support the issuance of a search warrant at petitioner's residence on North 40th Street.

This Court does not intimate that there is an automatic cut off date from the time of observations upon which the search warrant is based until the issuance of the warrant, after which time there cannot be a finding of probable cause. The facts of this case, i. e., the long period of time between the observations and the issuance of the warrant; petitioner's move to another residence concerning which there was no evidence to cause a reasonable person to believe that the items sought were in that residence; the absence of specific facts to support a finding of a continuous course of conduct; and, the vagueness of the warrant itself; all work against a finding of probable cause.

Therefore, the petition is hereby granted and the conviction in the child molesting case, Maricopa County Superior Court, Cause No. CR–74621, is set aside since it is not disputed that without the evidence seized, petitioner could not have been convicted.

It is further ordered that this case shall be remanded to the state courts for resentencing in Maricopa County Superior Court, Cause No. CR–74620, on the second degree rape offenses, in light of Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968). The sentencing judge in the state court in petitioner's case testified as a witness in the hearing held by this Court that he did not think the evidence, herein held inadmissible, influenced his sentencing of petitioner in the statutory rape case. This Court believes that this matter should be remanded to the state courts for such proceedings as the sentencing court may wish to order, so that the state court judge may reevaluate his sentence acting as a judge and not as a witness testifying in this Court. Furthermore, this Court does not consider it appropriate that the sentence in this case should be a matter for any judge to consider other than the original sentencing judge.