**STATE of Iowa, Appellee,**

v.

**Stephen F. WOODCOCK, Appellant.**

**No. 86–561.**

Supreme Court of Iowa.

June 17, 1987.

Charles L. Harrington, Appellate Defender, James F. Whalen and Dory A. Sutker, Asst. Appellant Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., James A. Smith, Co. Atty., and Gregory Biehler, Asst. Co. Atty., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

The defendant, Stephen F. Woodcock, appeals his conviction of two counts of third-degree sexual abuse, Iowa Code §§ 709.1, 709.4 (1985), on the ground that evidence obtained through a search of his home was erroneously admitted at the trial. We affirm.

In May 1985, Des Moines police officers were involved in a large-scale investigation of five men, including Woodcock, who were reportedly involved in illegal sexual activity with minors. As a part of this investigation, the officers applied for search warrants for several premises, including the residences of the five suspects.

In the application for the search warrant of Woodcock's home, the following items were sought, among others:

3. Any and all diaries, lists, card files, notebooks, which contain the names and addresses, physical descriptions, or dates of births of juveniles or minors. Any photographs of children or minors, juveniles located in the bedroom of Steven (sic) Woodcock and specifically in his dresser drawers with the mirror on it. Particularly a nude photograph of a juvenile named [J.L.].

The applications and warrants were presented to district judge Theodore Miller.

A search warrant was issued for Woodcock's home, and the search was conducted the same evening. The police found a decorative canister which contained several slips of paper, among other items. Some of the slips contained names and telephone numbers; some included addresses; and some of them listed only telephone numbers. A list of approximately one hundred names and/or phone numbers was developed from this list, leading the police to several minor children who eventually testified against Woodcock.

Woodcock claimed this testimony was poisoned fruit of an illegal search and thus inadmissible, *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963), and moved to suppress the minors' testimony. He argued the application failed to show probable cause, because the information provided to the issuing judge was stale, and claimed that the items were not sufficiently described in the application and warrant.

Judge James P. Denato ruled that, because the information provided in support of the search warrant was approximately one and one-half years old, it was insufficient to establish probable cause for the warrant. *See Sgro v. United States*, 287 U.S. 206, 210–11, 53 S.Ct. 138, 140, 77 L.Ed. 260, 262–63 (1932). Nevertheless, he denied the motion to suppress under the "inevitable discovery" rule of *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387–88 (1984). The court rejected the argument that the slips had been inadequately described.

On appeal, Woodcock asserts that the search warrant lacked probable cause and that exceptions to the warrant requirement, such as inevitable discovery or independent source, are inapplicable. He again argues that the description in the application and warrant did not include the slips of paper.

### I. *Probable Cause.*

The general principles regarding a probable cause determination for search warrants are well settled; "the test is whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there." *State v. Seager*, 341 N.W.2d 420, 426–27 (Iowa 1983).

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, *given all the circumstances set forth in the affidavit before him*, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place." (Emphasis added.)

*State v. Luter*, 346 N.W.2d 802, 807 (Iowa 1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2337, 76 L.Ed.2d 527, 548 (1983)).

The search warrant application in the present case was presented to the judge on May 16, 1985, and was based largely on police interviews of M.S., a seventeen-year-old male who had told them he had been sexually involved with the five men in question, including Woodcock. The affidavits reveal several encounters between M.S. and the five suspects, the most recent of which was just five days prior to the search warrant applications. None of these recent events, however, involved Woodcock.

The applications for warrants against all five suspects were virtually identical, and only portions of the information pertained specifically to Woodcock. As to him, the application stated:

[M.S.] ... met Stephen Woodcock at Moulton Elementary School in 1979–80. In 1983 when [M.S.] ... was in 9th grade at North High School, Stephen Woodcock engaged [M.S.] ... in oral sex and masturbated [M.S.].... Mr. Woodcock displayed "Playboy" magazine to [M.S.] ... during 1983. Mr. Woodcock related to [M.S.] ... in the fall of 1983 that he engaged in sex acts with children.

These events involving Woodcock predated the warrant by approximately a year and a half and, Woodcock argues, could not rise to a showing of probable cause as to

any current activities. It has been said, however, that

> the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time we must consider the nature of the unlawful activity. Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant.

*United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972). The test for probable cause in general is said to be one of probabilities, which "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949).

Applying the tests set out above, would a person of reasonable prudence believe evidence of a crime would be found in Woodcock's home, based on information which was approximately a year and a half old? If it were an isolated act such as a murder or rape, the answer has generally been no; the information would be too stale to constitute probable cause. *See* LaFave, *Search* and *Seizure: A Treatise on the Fourth Amendment* § 3.7(a), at 82 (2d ed. 1987) [hereafter LaFave].

■ As already noted, however, the nature of the offense is a factor bearing on a claim of staleness, and it would be reasonable for an issuing magistrate to conclude that a person charged with sexual exploitation of children through photographs and similar items would be likely to retain them for an indefinite period. The affidavit presented to Judge Miller, in fact, stated just that. It said:

Your affiant has had conversations with Paul Houston, Special Investigator for the Polk County Attorneys Office who has received training in the area of Child Sexual Exploitation and pedophiles and Mr. Houston and your affiant both have received training that indicates that pedophiles and others who sexually exploit children by taking erotic photographs are inclined to not destroy such photographs but to save them for future use and gratification and that such individual[s] maintain lists by way of documents and computer lists of children they are sexually active with including the names, ages, addresses and birth dates of such children.

Thus, in contrast to theft or robbery cases where the evidence would be expected to be moved fairly rapidly, and in contrast to drug cases where the evidence would likely have been sold or consumed in a year and a half, the types of material involved here would be more likely to be retained. Their perceived usefulness to the suspect would be of a continuing nature, through gratification obtained by him.

In analogous cases, where business records have been sought after the passage of considerable time, staleness claims have been rejected, because it could be inferred that the suspect would retain records indefinitely. LaFave, § 3.7(a), at 83.

The Arizona Supreme Court held that information of a similar nature was not stale, despite the passage of five months since the items were last observed, because they

> were pictures of a sexual nature which it is reasonable to believe the defendant intended to keep. We do not believe that the staleness of the information indicates lack of probable cause, and the motion to suppress was properly denied.

*State v. Kasold,* 110 Ariz. 563, 566, 521 P.2d 995, 998 (1974).[1]

---

1. The United States District Court for the district of Arizona set aside this conviction, largely on the basis that the defendant had moved in

the interim, after the witness had observed the photographs and before the warrant was issued. *See Kasold v. Cardwell,* 393 F.Supp. 197, 200

In cases where the question of probable cause is close, resolution of the issue is "largely determined by the preference to be accorded warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *State v. Seiler*, 342 N.W.2d 264, 266 (Iowa 1983). In making such decisions, it is said that the judgment of an issuing magistrate on the question of probable cause "should be paid great deference by reviewing courts." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637, 645 (1969); *State v. Luter*, 346 N.W.2d 802, 807 (Iowa 1984). When viewed in light of the nature of the items sought and giving deference to the judgment of the issuing judge, we conclude that probable cause was established. In view of this disposition, we need not deal with the State's inevitable discovery and good faith exception arguments.

## II. *Particularity of the Warrant.*

The application for the search warrant and the warrant itself requested "[a]ny and all diaries, lists, card files, notebooks, which contain the names and addresses, physical descriptions, or dates of birth of juveniles or minors."

 Woodcock argues that this did not include the canister with the slips of paper enclosed. As we said in *State v. Leto*, 305 N.W.2d 482, 487 (Iowa 1981), the degree of particularity required must be made on a case-by-case basis with consideration being given to the nature of the crime involved and the type of evidence being sought. We said there:

"Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the general class of items will suffice, because less particularity can be reasonably expected than for goods (such as those stolen) whose exact identity is already known at the time of issuance."

*Id.* at 487 (quoting *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir.1980)). *See generally* LaFave, § 3.7(a), at 76.

(D.Ariz.1975). LaFave suggests that the setting aside of this conviction failed to give sufficient

 We agree with Judge Denato that the description of the items in the application and warrant, taken in a common-sense manner, is broad enough to include the names, addresses and telephone numbers found on the slips of paper. We therefore reject Woodcock's second argument.

We find no basis for reversal.

AFFIRMED.

All Justices concur except CARTER, J., who concurs specially.

CARTER, Justice (concurring specially).

I concur in result but would decide the case on the same theory employed by the district court.

weight to the nature of the items seized. La-Fave, § 3.7(a), at 87 n. 48.