**STATE of Iowa, Appellee,**

v.

**Christopher Fenton PADAVICH, Appellant.**

**No. 94–117.**

Supreme Court of Iowa.

July 19, 1995.

Rehearing Denied Sept. 15, 1995.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds Lapointe, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., Mark Kruse, County Atty., and John Courter, Sp. Prosecutor, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

Christopher Fenton Padavich appeals from judgment of conviction and sentence for possession of marijuana with intent to deliver and failure to affix drug tax stamps. He raises four issues. First, the anticipatory search warrant at issue is invalid under Iowa Code sections 808.3 and 808.4 (1993). So the district court erred in overruling Padavich's motion to suppress the evidence seized under the warrant. Second, the jury verdict on the element of possession for both offenses is not supported by substantial evidence. Third,

Padavich's trial counsel was ineffective because, before sentencing, counsel failed to alert the court to alleged jury misconduct that bore on the jury's determination of Padavich's guilt. Finally, the district court abused its discretion in sentencing Padavich by considering two past convictions that had been reversed.

After carefully considering all the issues raised, we come to the following conclusions. First, under our recent decision in *State v. Gillespie*, 530 N.W.2d 446, 448 (Iowa 1995), anticipatory search warrants are invalid under sections 808.3 and 808.4.

However, the district court's error in overruling Padavich's motion to suppress on the anticipatory search warrant issue is harmless. Under the remaining facts presented in the affidavit, the magistrate correctly concluded there was probable cause to issue the search warrant.

Second, we conclude substantial evidence supports the jury's finding of possession. Third, we think Padavich's ineffective assistance of counsel claim is more appropriate for postconviction relief consideration because the record is inadequate to decide it on appeal. Finally, the district court did not abuse its discretion in sentencing Padavich. Padavich's two past convictions—since reversed—were not a basis for the court's sentence.

We affirm.

I. *Background Facts.*

On February 19, 1993, magistrate N. Jean Clark issued two search warrants authorizing a search of Padavich's person and two residences owned by his parents. One of these residences was located near the Chariton River Baptist Church in Appanoose County (the Brushy Church residence). The other residence was located in Walnut Township. The warrants additionally authorized the search of nine cars owned by Padavich or his parents. Padavich challenges only the validity of the search of the Brushy Church residence.

The affidavit of police officer Michael Seay was submitted in support of the warrants. The affidavit relates that a confidential infor-

mant had arranged to sell three kilograms of cocaine to two men from New York. Padavich had introduced the parties to each other at the Brushy Church residence, where the sale was to take place on February 19.

The affidavit also stated that the confidential informant had seen Padavich with a "handful" of marijuana at the Brushy Church residence on February 16, 1993. According to the confidential informant, the two had smoked some of that marijuana on that occasion.

The affidavit mentioned that another confidential informant had provided the police with information that on or about May 10, 1988, Padavich was growing marijuana at his Walnut Township residence.

The affidavit also stated a John Abbott had told officer Seay on March 23, 1991, that Abbott owed Padavich money for marijuana. According to the affidavit, Abbot had also said that he had seen marijuana at the Walnut Township residence in January and March of 1991. Additionally, Abbott stated that Padavich wanted him to participate in the purchase of one kilogram of cocaine in New York. The affidavit provided no dates as to this last item of information.

Finally, the affidavit stated that a controlled delivery had been arranged whereby the first confidential informant would deliver one-half of a kilogram of real cocaine and two and one-half kilograms of fake cocaine at the Brushy Church residence on February 19, 1993.

The controlled delivery did not occur because Padavich left the Brushy Church residence before the confidential informant arrived. Officers then executed the search warrant. The police found bags of marijuana in various containers. The marijuana totaled about four and one-half pounds. No tax stamps were found on any of the seized marijuana.

## II. *Background Proceedings.*

The State filed a three-count trial information against Padavich. Count I was for possession of marijuana with intent to deliver. *See* Iowa Code § 124.401(1)(d). Count II was for failure to affix drug tax stamps. *See*

Iowa Code §§ 453B.1, 453B.3, 453B.7, 453B.12. Count III alleged prohibited acts. *See* Iowa Code § 124.401(1)(b)(2)(b). Count III was later dismissed on the State's motion.

Padavich filed a motion to suppress any and all evidence obtained in the search of the Brushy Church residence. The State resisted. After a hearing, the court overruled Padavich's motion.

The case proceeded to a jury trial. The jury returned a verdict of guilty on each of the remaining counts. The court overruled Padavich's pro se posttrial motions for new trial and motion for continuance.

The court entered judgment against Padavich on both counts and sentenced him to five years on each charge. The court ordered the sentences to run consecutively. The court also ordered Padavich to pay a $5000 fine and a thirty percent surcharge on each count.

It is from the judgment of conviction and sentence that Padavich appeals.

## III. *The Warrant Issues.*

The parties raise three warrant issues, concerning whether (1) anticipatory search warrants are recognized under Iowa law, (2) the existing facts in the affidavit in support of the warrant application provided probable cause to search the Brushy Church residence, and (3) the federal good-faith exception articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is recognized under Iowa law. Our disposition requires us to reach only the first two issues.

A. *Anticipatory search warrant.* The affidavit in support of the warrant provided in pertinent part that

[a] controlled delivery of the cocaine has been arranged for Friday, February 19th 1993, [confidential informant] # N2088 will deliver one half of a kilo-gram (approx. 1 lb. 1 oz.) of real cocaine and two and a half kilo-grams of fake cocaine to Christopher Padavich in exchange for sixty thousand dollars ($60,000). This will occur at the residence described earlier which is next to the Chariton River Baptist Church a.k.a.

Brushy Church, in Independence township in Appanoose County, Iowa.

◼ The parties do not dispute that this section of the warrant—pertaining to a search for cocaine—was, indeed, anticipatory. This brings the question down to whether the legislature intended to recognize anticipatory warrants under Iowa Code sections 808.3 and 808.4. We very recently decided it did not in *State v. Gillespie*, 530 N.W.2d 446, 448 (Iowa 1995).

In *Gillespie*, we concluded that under the plain meaning of sections 808.3 and 808.4, "probable cause must exist at the time the warrant is *issued* and *not at some future time when the warrant is executed.*" *Id.* In other words, the facts presented to the magistrate in the affidavit in support of the warrant application must exist at the time the warrant is applied for.

◼ That was not the case here. Impliedly, that part of the warrant regarding the search for cocaine was issued conditioned upon the future existence of probable cause. Probable cause would exist once Padavich was present at the Brushy Church residence to receive delivery of the contraband. These anticipated facts were nonexistent at the time the warrant issued.

Although the law was not settled when the district court made its ruling on Padavich's motion to suppress, it nonetheless erred in overruling Padavich's motion. However, this error is not fatal to the State's case if the evidence seized from the Brushy Church residence is admissible on a different ground appearing in the record.

B. *Probable cause for issuance of search warrant to search Brushy Church residence.* Padavich contends there was no probable cause for the magistrate to issue a search warrant for the Brushy Church residence. Most of the information presented to support the issuance of the warrant for the Brushy Church residence centered around the Walnut Township residence. Padavich insists this information does not establish probable cause to search the Brushy Church residence because the information was stale, too vague, and lacked any nexus to this residence.

The application in support of the warrant also contains information that a confidential informant had seen Padavich on February 16, 1993, at the Brushy Church residence with a handful of marijuana and that the two had smoked some of it there. Padavich thinks this information was insufficient to support the issuance of a search warrant for the Brushy Church residence on February 19, 1993. In Padavich's words, this is so "because logic tells us that a 'handful' of marijuana would likely be consumed in three days time."

◼ Probable cause to issue a search warrant exists when the facts presented to the magistrate show that a reasonably prudent person would believe a crime was committed at the place to be searched or that evidence of a crime could be located there. Close questions are generally resolved in favor of the preference for warrants. *State v. Todd*, 468 N.W.2d 462, 466 (Iowa 1991) (citations omitted).

As this court has noted,

[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found at a particular place.

*State v. Woodcock*, 407 N.W.2d 603, 604 (Iowa 1987) (citation omitted).

◼ We recognize that a magistrate oftentimes has difficulty determining whether an affidavit demonstrates the existence of probable cause. But police action taken under a search warrant is preferred over warrantless searches and seizures. *State v. Lampson*, 260 Iowa 806, 812, 149 N.W.2d 116, 119 (1967). So we resolve close or marginal cases by the preference we give warrants. Additionally, we draw all reasonable inferences to support a magistrate's determination of probable cause.

◼ "The issuing magistrate must find probable cause at the time the search warrant is issued, and not merely at some earlier time." *State v. Bean*, 239 N.W.2d 556, 559

(Iowa 1976) (citation omitted). As *Bean* recognizes,

> [t]he proof of probable cause which must be made before a search warrant may be issued must be of facts so closely related to the time of the iss[uance] of the warrant as to justify a finding of probable cause at that time, and whether the proof meets this test must be determined by the circumstances of each case. Generally, it may be said that no more than a "reasonable" time may have elapsed, and that the recital must be of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time.... In determining whether the lapse of time has been unreasonable, heavy reliance will often be placed upon the nature of the alleged offense, a greater lapse of time being permissible where the activity is of a continuous nature as distinguished from an isolated violation.
>
> A claim of staleness of facts precluding issuance of the warrant is not to be determined by a mere computation of the number of elapsed days.

*Id.* (citations omitted).

■ In making a probable cause determination, a magistrate may consider several other factors relevant here. For example, the magistrate may consider a suspect's history of involvement in the drug trade. *See United States v. Harris,* 403 U.S. 573, 579, 91 S.Ct. 2075, 2079–80, 29 L.Ed.2d 723, 731 (1971) (informant reported having purchased whiskey from respondent within two weeks of the warrant and purchases were part of a history of purchases over a two-year period; on these facts, Court rejected contention that the informant's observations were too stale to establish probable cause at the time the warrant was issued); *State v. Cassady,* 243 N.W.2d 581, 582 (Iowa 1976) (held that issuance of search warrant not assailable on ground of staleness where affidavit showed facts suggesting defendant's continuing involvement in narcotics). Similarly, the magistrate may consider the defendant's reputation. *See Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708 (1960), *overruled on other grounds,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)

("that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history").

■ In addition to these factors, the magistrate may also consider information from confidential informants received over a long period of time that corroborates more recent information in the application for the search warrant. Although the corroborating information need not be current, such information must relate to "prior conduct sufficiently similar to the acts in question." *Commonwealth v. Weidenmoyer,* 518 Pa. 2, 10, 539 A.2d 1291, 1295 (1988) (informant stated he had known suspect for about one year and that about six months before the search he had observed methamphetamine in suspect's possession; also, police officer stated suspect had purchased methamphetamine in pound quantities one year before the search).

With these principles in mind we turn to officer Seay's affidavit in support of the application for the search warrant. The affidavit provides the following pertinent information:

> That on or about Friday, February 12, 1993, C.I. # N2088 and Christopher Padavich arrived at a single family, white stucco residence owned by Matthew and Virginia Padavich. [This residence is known as the Brushy Church residence.] [Christopher Padavich] introduced C.I. # N2088 to two white males who Christopher Padavich advised were from New York. At this meeting it was agreed that C.I. # N2088 would sell three kilo-grams (approx 6 lbs 6 oz) of cocaine to the individuals on Friday, February 19th 1993, and that they would meet at this residence on that day. That one of the two men from New York showed C.I. # N2088 a briefcase full of money and said that there was one hundred and twenty-five thousand dollars ($125,000) in the briefcase. That the two men from New York left the residence and left the briefcase full of money with Christopher Padavich, saying that they would be back on Friday, February 19th 1993.
>
> . . . .

On or about Tuesday, February 16th 1993, C.I. # N2088 arrived with Christopher Fenton Padavich, at the [Brushy Church] residence.

That on or about Tuesday, February 16th 1993, while C.I. # N2088 was inside the aforementioned residence[,] C.I. # N2088 observed Christopher Padavich return from an upstairs room carrying a handful of green plant material ... which C.I. # N2088 knew to be marijuana, and later that same evening smoked some of this marijuana with Christopher Padavich inside this residence.

Matthew and Virginia Padavich [owners of this residence] do not reside [there]. [The owners] are currently living in Plano, Iowa and that deputy Anderson has delivered a death message to Matthew at the Plano residence in the past.

It is common knowledge that Christopher Padavich has a small herd of cattle at [Brushy Church] that Chris takes care of; that these cattle have been observed by [various law enforcement officers]; that Christopher Padavich has told [Seay and another officer] that he is farming the [Brushy Church] farm and buying cattle; and that currently Christopher Padavich has contracted with a Jimmy Walker who is a carpenter, to have Walker remodel the inside of this residence.

. . . .

On 3–7–92 Chris Padavich reported a theft of hay that he indicated he owned at the residence located [on the Brushy Church] property.

. . . .

[Seay and another officer] have also observed several vehicles that Chris drives and has been observed driving on several occasions parked at the ... [Brushy Church] residence.

On or about May 10th 1988, C.I. # 1 provided the Centerville police department with information about forty-six (46) individuals in the Centerville, Appanoose County area, and their involvement in the manufacturing, sale, distribution and usage of controlled substances. That of the forty-six (46) individuals one is now deceased and eighteen have since been arrested and charged with some type of controlled substance violation.

That C.I. # 1 provided information that was directly responsible for the issuance of two (2) search warrants which [led] to the arrests of five individuals.

That on or about May 10th 1988, C.I. # 1 stated that Chris Padavich grows a very high grade of marijuana called Hydro–Ponic, that Chris Padavich grows this type of marijuana at his residence in Walnut [Township].

That Padavich is associated with a guy named "Vinnie," that "Vinnie" is from New York. That Chris Padavich has sold alot of Hydro–Ponic marijuana to "Vinnie." That "Vinnie" is known to carry large sums of currency and has been known to purchase large quantities of marijuana ... which he transports back to the New York area to sell.

On March 23, 1991 John Abbott informed [Seay and another officer] that he, Abbott, owed Chris Padavich $735 for a marijuana debt.

John Abbott also told [Seay and the other officer] that he was at Chris Padavich's residence in Walnut Township during the month of January, 1991 and saw approximately $20,000 in U.S. currency along with approximately five pounds of marijuana.

. . . .

John Abbott also stated that Chris Padavich wanted him to go to New York and bring back one kilogram of cocaine for Padavich.

Padavich told Abbott he could drive to Des Moines, Iowa and rent a conversion van at which time Abbott would then drive the van to New York while Padavich flew to New York. Once Padavich was in New York he would make contact with his New York connection and get the one kilogram of cocaine and then place the cocaine in the van that Abbott was to drive to New York.

Once the cocaine was concealed in the van then Abbott would drive back to Centerville, Iowa and Padavich would fly back to Iowa.

Padavich offered to pay Abbott $3,200 in U.S. currency to drive to New York and then return to Iowa with the cocaine.

During the month of March 1991 John Abbott was at Padavich's residence in Walnut Township and saw approximately a quarter pound of marijuana [for] which Padavich stated he wanted $1200.

Padavich also told Abbott that he grew Hydro–Ponic marijuana.

The affidavit shows facts which, if true, suggest several inferences and conclusions. First, Padavich has a history of, and reputation for, drug involvement. Padavich grows, uses, and sells drugs. His involvement with drugs has been and is extensive. This history dates back to 1988 and continues up to the time of the issuance of the search warrant for the Brushy Church residence.

Second, although most of this drug activity took place at the Walnut Township residence, there is evidence of recent drug activity at the Brushy Church residence. For example, seven days before the magistrate issued the search warrant for the Brushy Church residence, discussions regarding a large cocaine sale took place there. And three days before the warrant issued, Padavich and one of the confidential informants were smoking marijuana at this residence. The past drug activity at the Walnut Township residence, the recent drug activity at the Brushy Church residence, and Padavich's other activities at this last residence (raising cattle and remodeling) suggest he was probably keeping drugs at both places.

Last, as mentioned, Padavich suggests that the handful of marijuana would likely be consumed in three days. From this he reasons that more than likely none would be left on the premises when the search warrant was issued. (The smoking incident allegedly occurred on February 16; the search warrant was issued three days later.) This thinking ignores Padavich's on-going drug activities and assumes the marijuana smoking was an isolated incident. All the past drug activity described in the affidavit corroborates the confidential informant's statement about the marijuana smoking incident on February 16, 1993, at the Brushy Church residence. This past drug activity also sug-

gests that the smoking incident was not an isolated drug activity.

■ Given the facts in the affidavit, what is more likely and reasonable for the magistrate to expect is that (1) there was more than a handful of marijuana on the premises at the time the marijuana smoking incident took place, and (2) marijuana was still on the premises when the magistrate issued the warrant. Whatever doubt there may be on this point we resolve by the preference we accord to warrants. These existing facts in the affidavit established probable cause for the magistrate to issue the warrant. For this reason the district court did not err in refusing to grant Padavich's motion to suppress the evidence seized from the Brushy Church residence.

### IV. *Substantial Evidence.*

Padavich contends that the district court erred in failing to grant his motions for judgment of acquittal. While he does not dispute the evidence presented on the other elements of the crimes charged, he believes the State's evidence failed to prove he possessed the marijuana seized at the Brushy Church residence. Padavich says that at most this evidence shows only that he had access to marijuana. He relies first on the fact that the State's own witness, Lisa Grimm (Pangburn), stated the marijuana belonged to her.

His second argument is that the only other evidence on this issue was a plastic bag containing a green leafy substance. A police officer retrieved the bag along the route taken by Padavich as officers pursued him on February 19. The officer testified that in his opinion, the bag contained marijuana. Padavich thinks this evidence—when viewed alone or in conjunction with the testimony of Lisa Grimm (Pangburn)—could not substantially establish possession by Padavich.

■ The State counters there was abundant record evidence to support the jury's finding that Padavich possessed a controlled substance seized at the Brushy Church residence. Possession is an element of possession with intent to deliver and failure to affix

a drug tax stamp, the two crimes involved here.

We are bound by the jury's finding of guilt unless we determine that finding is not supported by substantial evidence. *State v. Bush*, 518 N.W.2d 778, 779 (Iowa 1994). Substantial evidence is such evidence that would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* The jury may give the evidence the weight the evidence should receive. *State v. Simpson*, 528 N.W.2d 627, 632 (Iowa 1995). We consider all of the evidence, not just the evidence supporting the verdict. *Id.* We review the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may be fairly and reasonably deduced from the evidence. *Id.* at 632–33.

Unlawful possession of a controlled substance requires proof of three elements: (1) dominion and control of the substance, (2) knowledge of its presence, and (3) knowledge of its nature. *State v. Rudd*, 454 N.W.2d 570, 571 (Iowa 1990). Possession can be actual or constructive and sole or joint:

The word "possession" includes actual as well as constructive possession, and also sole as well as joint possession.

A person who has direct physical control of something on or around [his] [her] person is in actual possession of it.

A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

1 Iowa Criminal Jury Instructions 200.47 (1989); *see also Simpson*, 528 N.W.2d at 631. Additionally, a fact finder may infer constructive possession when the thing is found in a place which is subject to the defendant's dominion and control, or to the joint dominion and control of the defendant and other persons. *Simpson*, 528 N.W.2d at 632.

Upon our review of the record, we conclude there is sufficient evidence of Padavich's knowledge and constructive possession of marijuana to support his two convictions. Although Lisa Grimm (Pangburn) testified she rented the Brushy Church residence from Padavich's parents during January and February 1993, other evidence would permit the jury to find that Padavich maintained at least joint possession of the residence with her.

Padavich contracted with Jimmy Walker to do odd jobs at the Brushy Church residence. This work was completed at the end of 1992 and the first two months of 1993. Up to the time of his arrest, Padavich paid for the materials and labor. In addition to other work, Walker put in five doors and five sets of new locks. He testified he gave Padavich keys to the locks about two weeks before his arrest.

One of the carpenters employed by Walker who worked on the house for about a month also testified. He stated that Padavich stopped at the house virtually every morning to feed the cattle and to let the construction crew into the house. A different carpenter testified that when Padavich went into the house, he did not ask anyone's permission to enter.

Walker also testified that about one week before Padavich was arrested, he asked Walker to insulate a crawl space. Once Walker was inside the crawl space, he found his path was blocked by a cooler. Thinking there might be something to drink inside the cooler, Walker looked inside. He saw what he thought was marijuana. Later he confronted Padavich about it, and Padavich said nothing. Walker did not report the incident to authorities.

A county jail employee testified that she monitored a phone call Padavich made from jail on March 14, 1993. Padavich instructed the individual he called to "[g]o to my house in Brushy and take some pictures of things that are in the upstairs closet."

The county sheriff testified that late in 1992, Padavich told him that he was buying and selling cattle. Padavich stated his cattle

operation was located on the Brushy Church farm.

Iowa division of narcotics enforcement special agent Jerry Nelson was one of the officers who searched the Brushy Church residence. He testified that three containers found in a second-story bedroom closet of that residence contained marijuana. Another container concealing marijuana was found in another bedroom. In the kitchen entryway, officers found a box containing a clear plastic bag containing marijuana.

The combined weight of the seized marijuana was four and one-half pounds. All told, it was divided into approximately seventy-one individual bags. Each bag was individually numbered in a consistent style. Agent Nelson testified that (1) drug dealers sometimes employ bag marking systems to record drug transactions, (2) the markings here seemed to indicate some sort of code, and (3) the way the marijuana was packaged was consistent with marijuana sales and deliveries.

During the search of the Brushy Church residence, officers found other indicia of Padavich's joint possession of the premises. On a stair landing, officers found a gas receipt, a grocery receipt, two fuel tax exemption certificates, and a livestock feed receipt. All but the livestock feed receipt bore Padavich's signature.

One of the confidential informants testified at trial. He described the meeting at the Brushy Church residence that allegedly took place on February 12, 1993, regarding the cocaine buy. He also testified about the marijuana smoking incident involving Padavich and him that allegedly took place at the residence on February 16.

The confidential informant also testified about being at the Brushy Church residence on other occasions in January 1993. On these occasions, Padavich let the informant into the house.

Additionally, the jury could find that while officers were following Padavich on the night of the search, he threw a bag of marijuana from his car into the ditch. Later that evening an officer recovered the pouch which had markings similar to the markings on the bags of marijuana seized from the Brushy Church residence.

Lisa Grimm (Pangburn) did testify that (1) the marijuana seized from the Brushy Church residence belonged to her, and (2) she had an agreement to sell these drugs and pay her supplier out of the proceeds from her sales. The jury could disbelieve Lisa for several reasons.

Lisa had been romantically involved with Padavich. Although they had parted by the time of trial, she testified she still loved him. She was unfamiliar with the drugs and with drug dealing. She could not testify as to the approximate value of the drugs. She said she put the markings on the bags but could not explain what the markings meant. She admitted she was illiterate. Officers found marijuana on the first floor of the residence. Yet Lisa could not explain the drug's presence there in light of her testimony that she never smoked nor kept marijuana on the first floor of the residence.

Reasonable minds could conclude that all of the evidence presented on the possession element was adequate to find that Padavich possessed the marijuana seized from the Brushy Church residence. The district court did not err in refusing to grant Padavich's motions for judgment of acquittal.

V. *Ineffective Assistance of Counsel.*

In a pro se motion for new trial, Padavich alleged jury misconduct. He claimed the jury relied on newspaper accounts not in evidence. At a hearing on his motion, Padavich told the district court that after the jury reached a verdict, two named jurors told him the jury discussed pretrial publicity and newspaper articles. Because the motion was two days late, the district court refused to hear it.

Padavich claims his trial counsel was ineffective because counsel failed to (1) raise the jury misconduct issue, and (2) argue that claim to the district court. Padavich thinks that because his counsel was ineffective Padavich should have a hearing on the issue of jury misconduct.

■ The record is not clear whether Padavich discussed the jury misconduct issue with his counsel. Because we lack an adequate record on the ineffective assistance of counsel claim, we think the claim is more appropriate for postconviction relief consideration. *See State v. Epps*, 322 N.W.2d 288, 292 (Iowa 1982) (issue of effectiveness of counsel, who failed to object to prosecutor's comment on defendant's failure to call witnesses, would be handled more effectively through postconviction relief proceedings in which a more complete record would be available).

## VI. *Consideration of Past Convictions in Sentencing.*

Padavich's final argument is that at the sentencing hearing, the district court abused its discretion by improperly considering two past convictions—later reversed—in fashioning Padavich's sentence. Padavich asks for a new sentencing hearing to cure this error.

The State counters that the court's on-the-record comments at the sentencing hearing—when taken in context—demonstrate the court did not rely on the reversed convictions. Rather, the court's comments demonstrate the court relied on one unreversed conviction contained in the presentence investigation report (PSI) in sentencing Padavich, which was well within the court's discretion.

At the sentencing hearing, the court made the following explanatory comments to Padavich after passing sentence:

[THE COURT]: In connection with your sentence, I considered all the options set out in [s]ection 901.5, and, of course, my judgment was based upon that which would provide maximum opportunity for your rehabilitation and at the same time protect the community from further offenses by you and others.

But to be more specific—and I think you're entitled to a specific explanation; I think all defendants are—is that I looked at your record or the presentence report, and I, of course, noted the things that the statute tells us to consider, and that is your age which I think was 30, if I remember correctly, that you're not married and

have no children and that your only employment I think for the last five and a half years was self-employment on the farm, and I think there was some evidence of that on the trial that you were probably farming with your dad, but I'm not saying you didn't have some pay for employment other than your father.

First of all, when I look at this, it's the nature of the offense. I guess that bothers me, and I can't think of a crime that probably does more damage to society than the delivery of drugs. And the problem is not just the delivery of drugs. It's what happened when it occurs, and it leads to more crimes. And after you get through with that, it generally leads to some violence. In substance, it's simply put that I can't think of a crime that has more damage to us in society.

I took a very close look at your record and your criminal offenses. And I knew about your conviction. I didn't try your case back on '82? I don't think, I did.

[THE DEFENDANT]: No, sir.

[THE COURT]: And I know that was reversed, and I see a lot of police reversals, and I'm not paying a lot of attention to police reversals. I don't think that's adequate. But I wanted to speak a little bit to what your counsel indicated about after your two felonies were reversed, you in essence wind up with no felonies or convictions. The problem with that thinking from my standpoint is your record reflects something to me. *There's some violence in this record which is very, very disturbing. I'm talking about your assault with intent, and that's disturbing in combination with the charges that you have.* I just didn't think that putting you on probation would do any good because you've had some difficulty with the law. And you are not rehabilitated, so I had no reason to assume that somehow being placed on probation would magically rehabilitate you. I'm not sure that you've got a fixed idea in your own mind that you wanted to be rehabilitated. And if you don't, I don't think you will be.

Lastly, I don't think the community would be protected when you're on proba-

tion. And I know your counsel has indicated otherwise, and he may be right, but I can only go from your record. And this record is going to keep on following you around all your life, so at some point in time, you're going to have to make a determination that you're not going to be involved with violations of the law.

But at any rate, that's the reason for the [c]ourt's sentence, and I wanted you to be aware of that.

The PSI reveals Padavich was convicted in 1982 for one count of burglary, second offense, and one count of theft, third offense. These convictions were reversed by the court of appeals in *State v. Padavich*, 344 N.W.2d 733 (Iowa Ct.App.1983) (Table). Padavich was also convicted of assault with intent. This conviction was not reversed.

The record clearly reflects that the court did not consider Padavich's record of reversed convictions in sentencing. Rather, the court based its sentence on the combination of the current charges and Padavich's one unreversed conviction for assault with intent. The court had discretion to consider this conviction in sentencing Padavich. *See State v. Peters*, 525 N.W.2d 854, 860 (Iowa 1994) (court can consider past convictions contained in presentence report in sentencing).

We conclude that, contrary to Padavich's allegation, the court avoided consideration of Padavich's two reversed convictions in sentencing him.

## VII. *Disposition.*

Our review leads us to the following conclusions. First, in *State v. Gillespie*, 530 N.W.2d 446, 448 (Iowa 1995), we held that Iowa Code sections 808.3 and 808.4 prohibit anticipatory search warrants. However, the affidavit in support of the search warrant application contained sufficient facts to establish probable cause to search the Brushy Church residence. So the district court correctly overruled Padavich's motion to suppress.

Second, there was substantial evidence in the record for a reasonable jury to find that Padavich possessed the marijuana seized from the Brushy Church residence. Third, we think Padavich's ineffective assistance of counsel claim is more appropriate for postconviction relief consideration because the record is inadequate to decide it on appeal. Finally, the district court did not abuse its discretion in sentencing Padavich because it did not rely on prior reversed convictions in sentencing him.

We affirm.

**AFFIRMED.**